# Abraham Dehuff *against* Dorothea Turbett and John Moore, executors of Samuel Turbett.

An executor not a witness in a suit brought against him. A creditor neglecting to sue his principal debtor on the application of a surety, does not thereby discharge the surety.

DEBT on bond. Plea, payment with leave, &c.

Turbett was surety in the obligation for John Wilkes Kittera, esq. conditioned for the payment of 179l. 9s. 10d. on the 1st May 1795, with interest. Four years interest were indorsed, paid on the bond, by Mr. Kittera, who had afterwards taken the benefit of the acts of insolvency.

It was proposed to examine John Moore, one of the defendants, to prove that he had demanded of the plaintiff to put the bond in suit against Kittera, in the month of October 1797.

The plaintiff relied on the objection against him, that he was a party to the suit, responsible for costs in case the plaintiff succeeded, for his false plea, on a deficiency of assets and that moreover he might be chargeable in a *devastavit*.

The defendant's counsel insisted, that there was no difficulty *respecting assets, and that they were bare trustees, who may be witnesses relating to lands. Doug. 134. The trustees of a public charity are good witnesses in a suit against

themselves, in their corporate capacity. Peake 153. The exception there, was not taken on the ground of interest. If persons in equity are made parties for form, they may be examined, saving just exceptions. 2 Atky. 228. [But not at law, ib.] The possibility of a *devastavit* is no exception; it must be an immediate interest which excludes a witness. 3 Term Rep. 27. As to the responsibility for costs, they offered to lodge the amount thereof in court, to be paid over, in case of a verdict for the plaintiff.

By THE COURT. We are bound to follow precedents. The general rule clearly is, that no party can be a witness in the cause. Some few exceptions occur in the books grounded either on the necessity of the case, or when a person is arbitrarily made a defendant, and no evidence given against him. 12 Vin. 26. 1 Vern. 308. 1 Sid. 237. Skin. 673. 2 Haw. 432. In Field *v.* Biddle, this matter was determined on solemn argument, and we see no occasion to alter that resolution. No necessity can be pretended here; the measure was devised by the executors; against them the suit must necessarily be brought. We do not think him a competent witness; but as the defence is conducted on a point altogether new in this state, we recommend to the plaintiff's counsel to agree that Moore may be sworn; and if a verdict should pass for the defendants, and the court should adhere to their present opinion, then a new trial shall be awarded without costs: which was assented to accordingly.

It appeared in evidence that the defendant's testator died in July 1796, and that his executors on the 13th or 14th October 1797, informed the plaintiff, that they apprehended danger from a delay of bringing suit against the principal. He complained that he had not received his interest, and said he would apply to Mr. Kittera when he came to town, and endeavour to get the interest and other sureties; but if he did nothing, he would put the bond in suit. He further said, they might pay the amount, and sue the obligation themselves. They replied, the situation of the testator's affairs prevented it, but they were well pleased with his first proposition.

Several suits brought against Mr. Kittera at subsequent days, appeared to have been paid off; some remained unsatisfied. He was a member of the house of representatives in the general government; congress began to sit on the 13th November 1797, and continued sitting till 16th July 1798. During this period, *and going and returning, he was entitled to his privilege. [*159 The summons in this cause issued on the 3d October 1798.

On these facts, it was contended by the defendants' counsel, that they were discharged from liability. Turbett became security for the payment of this bond, on the 1st May 1795. The penalty after that time became forfeited. He was surety to a definite and not an indefinite engagement, and it could never have

3 YEATES—10

been contemplated by the parties, that he was to be subjected to the payment of the money, unless in the instance of the insolvency of the principal. To call on him to pay the debt, while the debtor was solvent, would be inequitable ; to give delay at the expence of the surety, and without consulting him, would be unreasonable ; to delay bringing a suit against the principal, when required thereto by the surety, or his representatives, who might have more correct channels of information than the creditor, would be highly unjust. Equity it is said, forms part of our law, and in a variety of instances, chancery principles have been recognized and acted under, in this state. Two late cases appear analogous to the present. In Nisbet *v.* Smith *et al.* in 1785, a creditor giving the principal debtor further time for payment, was held to release the surety. 2 Bro. Cha. Rep. 579. It was there said by Lord Chancellor THURLOW, that a surety may *come into equity, and apply for the purpose of compelling the principal debtor for whom he is surety, to pay in the money* and deliver him from the obligation. And in Rees *v.* Berrington, Lord LOUGHBOROUGH decreed the same point in 1795, the creditor having taken notes from the principal. 2 Ves. Jr. 540. And the chancellor remarks, that where a man is surety at law for the debt of another, payable at a given day, if the obligee defeats the condition of the bond, he discharges the security. If a bond is payable in six months with a surety, he does not become bound to answer the payment at twelve months where it was to be at six. The principle is a legal principle. If an action had been instituted against Mr. Kittera to November term, 1797, agreeably to the requisition of the executors, there is the highest probability, that this debt would have been discharged. Three actions commenced to August term 1798, have been satisfied. This being a case of security, might also have received a preference. On a counterbond, though the surety is not sued or molested, yet he may bring a bill to compel the principal to pay the debt. 1 Vern. 189. Where a probable injury may happen, chancery will give relief on a bill *quia timet.* 1 Cha. Ca. 223.

For the plaintiff it was urged, that if the doctrine contended for by the adverse party prevailed, it would unhinge the settled *160]  *opinion of the country in cases of specialties, and infallibly produce great and serious inconveniences. They had been taught to believe, and the general idea was, that sureties joining in a bond made the debt their own as to the creditor ; and put it in his option to sue all or either of the obligors as he pleased, (provided the obligation was several) though he could have but one satisfaction. The sureties have no power to give directions when the bond shall be put in suit, or determine how long they shall continue liable. The defendant's testator is a principal as to the plaintiff. If his acquiescence is of any moment, he acquiesced in the security until the time of his death,

fourteen months and upwards from the day of payment ; and his property in the hands of his executors became chargeable with the debt. His representatives have no reasonable ground of complaint. The plaintiff was willing to assign to them the obligation, on their paying the amount, and this he was not bound to do by the laws of England. A surety in a bond there cannot insist on the assignment of it, upon his discharging the same. 1 Vez. 339. Surety co-obligor may pay the obligation, and then bring case against his principal. 2 Vez. 570.

The two late cases cited by the defendants' counsel, it must be confessed, go beyond the ancient precedents in equity. In Heath *v.* Percival, 1 Wm. 682, A and B, partners in trade, were bound in a bond to C. They broke off the partnership and divided the stock, and A undertaking to pay the company debts, public notice was given thereof, that the creditors might receive their demands. Though C knew of this, and agreed to wait on receiving 1 per cent. additional interest from A, yet he proving bankrupt, C recovered his demand against the estate of the other obligor, at so remote a period as 27 years from the creation of the debt. In 2 Vez. Jr. 542, it is said, that a defendant cannot aver at law, that he was surety in the bond ; it is the form of the security which forces the party into equity. How far under our local circumstances the authority of the two late cases relied on will be recognized by the court, must be submitted to their judgment.

The court gave it in charge to the jury, that if the true meaning of the parties was, that reasonable time should be allowed for an application to Mr. Kittera, to procure the interest and other sureties, then they must judge whether the period which had elapsed from the time of the defendants' requisition, until his privilege commenced as a member of congress, was unreasonable or not. No evidence has been given when he returned home, or what communication was had with him. If the suit *had been brought to November term 1797, it is at least [*161 dubious whether any part of the money would have been recovered ; for the judgment might have been delayed by a removal into this court.

But it has been contended, that whether the money could have been got or not by an immediate suit against the principal, the present defendants are discharged.

It is obvious that this doctrine cannot be correct in all cases, particularly in those of strong probable insolvency. Unless an indemnity is offered, the creditor might be subjected to the payment of costs.

Great reliance has been placed on the cases of Nisbet *v.* Smith and Rees *v.* Berrington. Adjudications in England since the revolution, are not equally authoritative with those determined before that era, until the judiciary here have decided on them,

and are fully satisfied that they are applicable to our local situation.

We think that the general idea of the liability of sureties in a bond in this commonwealth, has been justly stated by the plaintiff's counsel; but, we are by no means prepared to say, that the conduct of the obligee can, under no given circumstances, absolve sureties, or even that the result of our decision in similar cases to those cited, would not have corresponded with the Chancellor's decrees; though certainly not for the reasons furnished to us. In Nisbet v. Smith, three years further time was given by the creditor, contrary to the express direction of the surety: and it is there said, that a surety, generally speaking, may come into equity, and apply for the purpose of compelling the principal debtor for whom he is surety to pay in the money and deliver him from the obligation; and that the obligee had done that very thing which the court would have compelled him to have done, namely, to bring his action. 2 Bro. Cha. Rep. 582. In Rees v. Berrington it is also said that a surety has a right, if the bond is not put in suit, to call upon the holder of it to enforce payment. In that case, two successive sets of notes were accepted by the obligee from the principal debtors giving them further time, without any communication with the surety, who afterwards without notice paid over to the obligors 3000l., instead of paying the balance of 2400l. to the obligee. 2 Ves. Jr. 540, 541. But what species of suit could Turbett or his executors, amongst us, have brought against Dehuff to compel him to bring his action against Kittera? Or what suit could they bring against the latter to oblige him to pay the debt? They must have waited until they paid the money, as there was no counter bond. 2 Vez. 570. The decrees in those instances pursued the effect of bills brought by sureties for relief.

*But though by the terms of the constitution, (Art. 5, § 6) the Supreme Court had, "besides the powers theretofore usually "exercised by them," the powers of a Court of Chancery to perpetuate testimony, obtaining evidence from abroad, and the case of persons *non compotes mentis,* yet they are restricted thereby. A different conformation of the judicial authority necessarily produces different effects. Thus, in England, a third mortgagee may buy in the first incumbrance to protect his own mortgage, if he had no notice when he lent the money, and shall hold in exclusion of the second. But it is remarked by Lord Chancellor HARDWICKE, that this could happen in no other country, because the jurisdiction of law and equity is administered in England in different courts, and creates different kinds of rights in estates. 2 Vez. 573, 574. The rule in chancery is, where one has law and equity with him, chancery will not interfere in favour of a mere equity. But if this had happened in any other country, it could never have been made a question, for *qui prior est tempore, potior est jure.*

So formerly oyer of a deed was not dispensed with, though

shewn to be lost; (2 Stra. 1186, 1 Wils. 16, 1 Atky. 345;) and in this government, we have known many honest debts lost by a rigid adherence to this rule of law. The case of Read v. Brookman (3 Term Rep. 151; see the case of Law v. East India company, 4 Ves. Jr. 824,) occurred in 1789, in B. R., and since that resolution, a deed may be now pleaded as lost by time or accident.

Upon the whole, sitting as a court of law, we cannot say, that a creditor neglecting to sue his principal debtor, on the requisition of his surety, thereby discharges his surety in general; and we think it will require great consideration before such a rule is adopted.

Verdict, *pro quer.* for 211l. 7s. ·

Mr. C. Smith, *pro quer.*

Messrs. M'Kean and Hopkins, *pro def.*

Referred to in 4 Yeates 320.
Cited and followed in 5 S. & R. 372.
Referred to in 8 S. & R. 114, where the language of YEATES, J., in reference to the discharge of the surety is criticised, the court saying that either "the words said to have been uttered by that venerable judge, must have been spoken in very great haste, or there must have been an inaccuracy in the report.