ALBANY,
Dec. 1831.

Warner
v.
Beardsley.

---

## WARNER *vs.* BEARDSLEY.

Where a suit was brought against the *endorser* of a note given as collateral security for the payment of a sum of money, directed by an order of the court of chancery to be paid by the maker of the note on pain of *attachment,* and the endorser gave notice to the holder of the note that he would require him to exhaust the remedy by attachment previous to proceeding against him, *it was held*, that such notice did not discharge the *surety*, it appearing that the creditor had *offered* to permit him to proceed against the principal debtor upon the attachment, and that at the time of the giving of the note the maker was *insolvent.*

If the *endorser* in this case could be considered as a *surety*, as to which *quere*, the notice given, *it seems*, was not sufficiently explicit to discharge him from his obligation.

To discharge a *surety* on the ground of the omission of the creditor to proceed against the principal debtor when requested so to do, it must appear that the principal was *solvent* at the time of the request, *within the jurisdiction* of the state in which the suit against the surety is instituted, and that the creditor, without any reasonable excuse, neglected or *refused to proceed* until the principal debtor became *insolvent* and unable to pay.

Even a *court of equity* will not interfere with the *legal rights* of the creditor, unless the proceeding against the surety be unconscientious, or deprives him of some equitable benefit. The mere fact of the creditor holding other securities against the principal debtor, is no cause for delaying the collection of the debt against the surety, if the creditor be willing to make substitution.

ERROR from the supreme court. Warner was sued as the *endorser* of a promissory note, of which one Hildreth was *maker*, and Elmendorf the payee, which was transferred after due to the plaintiff. In November, 1823, Elmendorf, as the *re-*

ceiver of an estate in which the wife of the plaintiff was interested, obtained an order from the court of chancery that Hildreth should pay into court in 20 days $1150, the surplus of certain real estate sold by him as a master in chancery, or that an attachment issue against him. In January, 1824, Hildreth gave to Elmendorf his note, *endorsed by the defendant,* for $912, payable in 90 days, as collateral security for the payment of so much of the money ordered to be paid into court, and a stipulation was entered into that all further proceedings under the order should be stayed until the note should become due ; this arrangement, however, not to interfere with the proceedings under the order in chancery if the note should not be paid, nor with any proceedings for the balance, either before or after the note became due. The note was not paid, and due notice of non-payment was given. Afterwards, various interviews were had on the subject of the demand between Elmendorf and the defendant; the latter offered to renew his endorsement in case Hildreth made partial payments from time to time, but insisted that unless he did so, Elmendorf should proceed with the attachment, telling Elmendorf that he would hold him bound to exhaust the remedy by attachment before resorting to him, and that if he was sued on the note, he would file a bill in equity to compel resort to the attachment in the first instance. In one of those interviews the defendant informed Elmendorf that Hildreth was an officer in an assurance company, and could pay if pressed with the attachment. It appeared that previous to the commencement of this suit, Elmendorf offered the defendant to let him, he being a counsellor of the court of chancery, take out the attachment and execute it against Hildreth, which offer was declined. Hildreth was *insolvent* when the note was given, and his circumstances up to the time of the trial of the suit on the note against the defendant had been growing worse ; he, however, had many friends in 1824, and it was proved that, had the attachment issued, those friends would probably have paid the debt. The jury, under the charge of the judge, found a verdict for the plaintiff for the amount claimed. The defendant having excepted to the charge of the judge, moved the

ALBANY,  supreme court on a bill of exceptions for a new trial ; but the
Dec. 1831.  court, instead of granting a new trial, gave judgment for the

Warner  plaintiff, and the defendant sued out a writ of error.  See case
v.  and the opinion of the court delivered by Marcy, J., 6 Wen-
Beardsley.  dell, 610 to 615.

*H. W. Warner,* for the plaintiff in error, insisted that the
defendant below, the plaintiff here, is to be regarded merely
as a *surety* and that as such surety he was entitled to require
the holder of the note to exhaust his remedies against the prin-
cipal debtor before calling on him for payment ;  that an en-
dorser of an accommodation note for the benefit of the ma-
ker, taken by the holder for an *antecedent debt,* is considered in
law merely as a *surety,* and entitled to all the rights and pri-
vileges appertaining to that character ;  and that such note is
not subject to the *law merchant,* except as to notice of non-
payment, &c.   In support of these positions, he cited *Hubbly*
v, *Brown,* 16 Johns. R. 70 ; *Hayes* v. *Ward,* 4 Johns. C. R.
123 ; *Clason* v. *Morris,* 10 Johns R. 524 ; *Brown* v. *Mott,* 7
Johns. R. 361 ;  *Bay* v. *Coddington,* 5 Johns Ch. R. 54, 20
Johns. R. 637, S. C. in error ; *Pain* v. *Packard,* 13 Johns. R.
174 ; *King* v. *Baldwin,* 17 Johns. R. 386, in error ;  8 Serg. &
Rawle, 113 ; 2 Coxe, 74 ; *Ruggles* v. *Holden,* 3 Wendell, 216,
opinion of Sutherland, J. ;  8 Pick. 122 ;  3  Bos. Pul. 366 ; 4
Bingham, 717 ;  2 Vernon, 608 ;  11 Vesey, 22 ; 2 Brown's C.
C. 578 ; 2 Vesey, jun., 540.  In relation to the case of *Trimble*
v. *Thorne,* 16 Johns. R. 152, cited in the opinion delivered in
this case  on the refusal of the supreme court to grant a new
trial,  he remarked that the observation there made, " that an
endorser, thought in the nature of a surety, is answerable upon
an *independent contract,*" was correct only when applied to the
case of a note transferred in the fair course of trade for a va-
luable consideration given or allowed on the strength of the
paper itself, and not when taken it payment, or as collateral se-
curity for the payment of an antecedent debt ; and besides, that
allusion to the principle adverted to was wholly unnecessary to
the decision of *Trimble* v. *Thorne,* as there was another and con-
clusive ground upon which the judgment in that case was given.

*C. F. Grim & G. C. Bronson,* (attorney general,) for the defendant in error, contended that this was not a case of *suretyship,* but an ordinary commercial transaction, by which the endorser according to the *law merchant,* undertook to pay if the maker did not. The character of suretyship depends upon the nature of the contract, and not upon the use to which it is applied. When the note fell due and remained unpaid, both maker and endorser might be proceeded against. Chitty on Bills, 291. Bayley, 95. 3 Wheaton, 520. 1 Bos. & Pul. 665. 10 East, 369. 3 Price's Exc. R. 521. If the doctrine could be established that a principal debtor is in the first instance to be proceeded against where the holder of an endorsed note *knows* that the endorsement was made for the accommodation of the drawer, it would have a most pernicious influence upon the commerce of the country; no discount could be obtained at a bank, for it is notorious that in most instances of notes presented for discount, endorsements are made for the accommodation of the drawers. The question, however, is settled in *Trimble* v. *Thorne,* 16 Johns. R. 152, where it was held that the endorser, though in the nature of a surety, is answerable upon an *independent contract,* and such is the received and well established law of the land. Admitting the doctrine of *Pain* v. *Packard* and *King* v. *Baldwin,* it has no application to this case, because here the creditor was never required to proceed against the principal debtor; he had notice, it is true, that he would be required to exhaust the remedy by attachment previous to proceeding against the endorser, but at no time was a demand made of him to sue out the attachment. To discharge a surety in such a case, his acts and declarations must be clear and explicit. 8 Serg. & Rawle, 110. To give to what was said, the effect of a requirement to sue out the process, would operate as a surprise upon the plaintiff. Besides, there is no pretence that at the time of this communication the principal debtor was *solvent,* and that he *subsequently* became unable to pay; on the contrary, it appears that even at the time of the giving of the note, he was *insolvent.* And again; a creditor, to charge a surety, is not bound to issue an execution against an *insolvent debtor.* 4 Cowen, 173. Where

a surety is bound by a contract *independent* of that of the principal, he cannot, either at law or in equity, require the creditor to enforce his remedy upon the contract of the principal before resorting to the surety; he can only ask, on paying the debt, to be substituted in the place of the creditor, as to his remedy against the principal. At all events, the creditor is not bound to proceed with any collateral remedy he may have, if he will permit the surety to use it for his indemnity; here the offer to use the attachment was made to the endorser, and rejected by him. Whatever equity, therefore, existed in the case was completely rebutted. 15 Serg. & Rawle, 28. 1 Paige, 185.

By the CHANCELLOR. In *Pain* v. *Packard*, 13 Johns. R. 174, the supreme court decided that the surety was discharged where the principal debtor was perfectly responsible at the time the debt became due, and the creditor, although requested by the surety, refused to proceed and collect his debt until the principal became insolvent. This decision was made without argument, and two, at least, of the judges who concurred therein, afterwards expressly dissented from it, and declared themselves satisfied it was wrong. It was also overruled by Chancellor *Kent*, in *King* v. *Baldwin & Fowler*, 2 Johns. Ch. R. 554, and although Chief Justice *Spencer*, afterwards succeeded in this court, 17 Johns. R. 386, in reversing the decree of the chancellor, it was in opposition to the votes of all the other justices of the supreme court who took part in the decision. The decision was made by the casting vote of the president against the opinions of some of the most distinguished lawyers in the state, who were then members of this court as senators. It also stands in opposition to the decisions of most, if not of all of the states in the union, where the question has arisen. *Davis* v. *Huggins*, 3 New-Hamp. R. 231. *Frye* v. *Barker*, 4 Pick. R. 382. *Buchannan* v. *Bordley*, 4 Har. & McHen. R. 41. *Croughton* v. *Duval*, 3 Call's R. 69. *Moore* v. *Broussard*, 20 Martyn's R. 277. *Lenox* v. *Prior*, 3 Wheat. R. 524. In Pennsylvania, where they have no court of chancery to enable the surety to proceed in his own name to compel payment by the creditor, it has, after much hesitation, been decided, that where the

principal is solvent, the surety will be discharged if the credi-
tor does not proceed and collect the debt on request, or permit
the surety to proceed in his name. See *Dehuff* v. *Turbitt's
Ex'rs*, 3 Yeates, 157. *Cope* v. *Smith's Ex'rs*, 8 Serg. &
Rawle, 110. *Gardner's Adm'rs* v. *Ferree*, 15 id. 28. But as
the case of *King* v. *Baldwin* was decided by the court of der-
nier resort, it must probably be considered as binding authority
in all cases coming directly within that decision. I am not, how-
ever, disposed to carry its principles any further, or to extend it
to cases in which the facts are materially different. To bring
a case within that decision, it is necessary for the surety to
show that the principal was *solvent* at the time he requested
the creditor to proceed and collect his debt, and was *within the
jurisdiction* of the state, and that the creditor, without any rea-
sonable excuse, neglected or *refused to proceed* until the princi-
pal debtor became *insolvent* and unable to pay. Applying
these tests' to the case under consideration, it is evident the
endorser of this note was not discharged by the mere neglect
to proceed and incarcerate the insolvent drawer, who had not
sufficient visible means to pay the costs of the proceeding.

The plaintiff in error entirely misapprehends the grounds
upon which even a court of equity proceeds to compel the
creditor to collect his debt of the principal. Under our law,
unless the contract is special that the surety shall only be lia-
ble after it is ascertained by due course of law that the debt
cannot be collected against the principal, the creditor has a
right to demand his money immediately from the surety, as
well as from the principal debtor; and a court of equity will
not interfere to deprive him of his legal rights, unless such
proceeding would be unconscientious, and would deprive the
surety of some equitable benefit to which he is entitled. If
the time of payment is past, and the creditor neglects to pro-
ceed, the surety himself may institute a suit in equity against
the principal debtor and the creditor; but such suit is not for
the purpose of delaying the latter: it is to compel the former
to pay the debt, and thus to relieve the surety from his respon-
sibility. So, if the creditor holds any additional or collateral
security against the property of the principal debtor, or other-
wise for the payment of the debt, the surety who pays is en-

titled to be substituted in the place of the creditor in respect to such security ; and where it is necessary that such securities should be enforced in the name of the creditor, or that he should do some act to give the surety the benefit thereof, a court of equity will compel him to do such act, or to permit the surety to proceed in his name, on his being indemnified for the expense and costs. Thus, under the English bankrupt law, as it formerly stood, a surety or endorser, who paid a debt after the bankruptcy, was not entitled to prove his debt under the commission. In such cases, to prevent injustice, the court of chancery, upon the surety's depositing the money and indemnifying the creditor against the expense, has compelled such creditor to prove the debt under the commission for the benefit of the surety. 6 Ves. jun. 734. 10 id. 409. As a general principle, however, if the surety, by paying the debt, and being substituted in the place of the creditor, will be entitled to all his rights, both as against the principal debtor, and as to any other securities held by the creditor, the latter cannot be delayed in the collection of his debt, if he is willing to make such substitution. In this case there was a distinct offer on the part of the creditor to permit the surety to proceed in the name of the creditor upon the attachment, to coerce any thing from the principal debtor which might be obtained by his incarceration.

I have looked into the principles of the civil law, referred to by the plaintiff on the argument, and I find if those principles are applied to this case, they will not place him in a better situation. In cases where, by the civil law, the creditor could be compelled in the first instance to discuss the property of the principal debtor, he was not bound to proceed against an *insolvent* who had no visible property within the jurisdic- of the courts of the state or country in which the suit was instituted against the surety. The party pleading *discussion* was bound to point out to the creditor property or effects of the principal debtor, which might be obtained and applied to the payment of his debt. He was also bound to furnish money to carry on the litigation, or to indemnify the creditor for the risk and expense of the discussion, 1 Bell's Law Dict. tit. Discussion, 454 ; 1 Domat B. 3, tit. 4, § 2, art. 5 ; *Baldwin* v.

Gordon, 12 Martyn's R. 378 ; Code Napoleon, art. 2023 ; and the surety could in no case delay the creditor by a plea of discussion where he was bound *in solido* as a principle debtor, either by a joint and several obligation, or as the endorser of a note or bill of exchange, or where the benefit of discussion was either expressly or impliedly waived. *Thibodeaux* v. *Pattin* 13 Mart. R. 478. Van Der Linden's Inst. 211. Code Nap. art. 2021. Commercial Code, art. 118, 187. But in these cases, although the surety, or person standing in the place of a surety, was not entitled to the benefit of discussion, he was in other respects entitled to the privileges of a surety, and if he paid the debt, he was subrogated to the rights of the creditor as against the principal debtor and his property. He was therefore discharged, either wholly or *pro tanto*, where the creditor had discharged any collateral security by which the whole or a part of the debt was secured. He had the right also to proceed against the principal debtor to compel the payment of the debt at any time after it became due, and was therefore absolutely discharged by any binding agreement on the part of the creditor, which extended the time of payment without his consent, and by which the remedy of the surety against the principal was also suspended. There is, therefore, no material difference, except as to the forms of proceeding between our law of principal and surety and the civil law, from which all our equitable principles on this subject were originally derived.

None of the principles which I have referred to are sufficient to discharge the legal or equitable liability of the plaintiff in error, upon the facts disclosed on the trial ; and although this is undoubtedly a hard case on the part of the surety, yet it was an obligation which he voluntarily assumed, and he is only in the situation of hundreds of others who have been compelled as sureties to pay demands for which they derived no benefit, and without the slightest prospect of indemnity from the principal debtor. I am satisfied the judgment of the supreme court was correct, and that it ought to be affirmed.

By Mr. Senator SEWARD.   Whether the plaintiff in error, as *endorser* of an accommodation note, is entitled to be regarded as a *surety*, and if so regarded, whether in accordance with the principle laid down in the case of *Pain* v. *Packard*, he could discharge his liability by giving notice to the holder of the note to prosecute his remedy, are questions not necessarily to be decided in this cause, and upon which I wish to be understood as not expressing an opinion by my vote.   If both those principles were assumed, still the notice proved in this case was not sufficiently explicit to discharge the plaintiff in error, and he ought moreover to have accepted the proffer of the attachment, and availed himself of the advantages it afforded.   For these reasons alone, I am of opinion that the judgment of the supreme court ought to be affirmed.

The court being *unanimously* of opinion that the judgment of the supreme court ought to be affirmed, it was accordingly AFFIRMED.