## HARRIS vs. NEWELL, imp.

PROMISSORY NOTES. *Rights and obligations of surety.*

1. Where one signs a note as surety, it is his business, and not that of the creditor, to see that the principal performs.
2. A surety is not released *at law* by a failure of the creditor to proceed upon being notified by him to do so; but in some cases, *equity* will interfere at his suit, to compel the principal to pay the debt, or to compel the creditor to proceed against the principal.
[3. Whether one who appears on the face of a promissory note as a principal, can show by parol that he signed it merely as surety, *quære.*]

APPEAL from the Circuit Court for *Sauk* County.

Action upon a promissory note in the usual form of a joint and several note, signed by the defendants, James Stewart and *E. H. Newell*, and running to one Chapman, or bearer. Stewart made default. *Newell* answered that the note was given for money loaned by Chapman to the defendant Stewart; that such loan was made solely for Stewart's benefit, and *Newell* signed it only as surety, all of which was well known to said Chapman; that when the note became due, Stewart was fully able to pay it, and the amount could have been collected from him by law; that *Newell* notified Chapman, who was then still the owner and holder of the note, to proceed and enforce the collection thereof from Stewart; but that Chapman gave Stewart further time thereon, and neglected and refused to enforce the collection thereof until Stewart failed and became worthless and irresponsible. It was not alleged or claimed that Chapman received any consideration for giving further time.

Upon the trial, after the plaintiff had put the note in evidence and rested, the circuit court refused to receive any evidence in support of the answer, and directed the jury to find for the plaintiff against *Newell*. There was a verdict and judgment accordingly; and *Newell* appealed.

*G. Stevens*, for the appellant, to the point that a surety is discharged under circumstances like those alleged in the answer, cited 2 Parsons on Con., 25; *Pain v. Packard*, 13 Johns., 174; *King v. Baldwin*, 17 id., 384; *Remsen v. Beekman*, 25 N. Y., 552; *Cope v. Smith*, 8 S. & R., 110; *Gardner v. Ferree*, 15 id., 28; *Wetzel v. Sponsler's Ex'rs*, 18 Pa. St., 460; *Bruce v. Edwards*, 1 Stewart (Ala.), 11; *Goodman v. Griffin*, 3 id., 160; *Towns v. Riddle*, 2 Ala., 694; *Gayle v. Randle*, 4 Porter, 232; *Strader v. Houghton*, 9 id., 334; *Hempstead v. Watkins*, 6 Ark., 317; *Lang v. Brevard*, 3 Strob. Eq., 59; *Thompson v. Watson*, 10 Yerg., 362. The same or a similar rule has been adopted in a number of states by statute, thus

recognizing the equitable right of the surety to some kind of protection. This is true of Alabama, Arkansas, Missouri, Mississippi, Illinois, Georgia, and perhaps others; the courts in Alabama, Arkansas, and some others, holding that the statute is merely declaratory of rights which would exist without it. See also the remarks of Cole, J., in *Gardner v. Van Norstrand*, 13 Wis., 543. If the character of the surety does not appear on the face of the instrument, the fact may be shown by parol; it being the fact which creates the equitable right, and not the form in which it is expressed. This is expressly so decided in *Bruce v. Edwards, supra,* and in *Riley v. Gregg*, 16 Wis., 666, and is in effect decided in most of the cases above referred to.

*J. W. Lusk*, for the respondent, contended that even in New York the erroneous rule first adopted in *Pain v. Packard*, 13 Johns., 174, has been frequently repudiated (*Herrick v. Berst*, 4 Hill, 656, per Cowen, J.; *King v. Baldwin*, 2 Johns. Ch., 554; opinions of Platt, J. and Van Vechten, Senator, in the same case in the court of errors, 17 Johns., 396, 401); and that, outside of New York and Pennsylvania, the opposite rule has always been adopted both in England and in this country. 2 Am. L. C. (5th ed.), 415; *Page v. Webster*, 15 Me., 249; *Davis v. Huggins*, 3 N. H., 231; *Mahurin v. Pearson*, 8 id., 539; *Hogaboom v. Herrick*, 4 Vt., 135; *Frye v. Barker*, 4 Pick., 382; *Bellows v. Lovell*, 5 id., 307; *Dennis' Ex'rs v. Rider*, 2 McLean, 451; *Carr v. Howard*, 8 Blackf., 190; *Taylor v. Beck*, 13 Ill., 376; *Pickett v. Land*, 2 Bailey, 608. See also *Ruggles v. Holden*, 2 Wend., 316; *Beardsley v. Warner*, 6 id., 614; and 1 Parsons on B. & N., 237.

Ryan, C. J.   I. On the face of the promissory note, the appellant appears as a principal.   We entertain very grave doubt whether it would be competent for him, as against the holder of the note, so far to vary his contract by parol as to

show that he signed the note as surety for the other maker. See 1 Parsons on Bills, 233.    We have lately held that an indorser cannot vary the legal contract of indorsement by parol. *Charles v. Denis* [*ante* p. 56]; *Eaton v. McMahon* [*ante*, p. 484]. The contract of a surety, and the contract of a principal, signing a promissory note, vary in some respects, different from that set up by the appellant in this case. And it is difficult to see why the same rule should not apply to the contract of maker and to the contract of indorser.

The appellant sets up the knowledge of the payee, at the time, that he signed the note as surety. This could not well affect the admissibility of parol evidence to vary the contract as he signed it. Where one, being a surety as between him and his principal, executes the contract as a principal himself, it may well be that the other party relies on his liability as principal, and would not have accepted his liability as surety. He may know that, as between themselves, one of the parties with whom he contracts is a surety; but he may accept their contract because, as to him, both are principals. In any view, it is difficult to see on what principle the surety may be admitted to limit his written contract by parol.

This question was not raised at the bar, and is too important to be passed upon without argument. Our first inclination was to order a reargument on the point. But as the other question was very ably discussed, and as we are prepared to do so, we have concluded to decide this case upon it, as if the appellant were a surety in form.

II. A disposition is shown in some of the cases to overlook somewhat the distinction between sureties and guarantors; but the contract of a surety is essentially different from the contract of a guarantor. *Oxford Bank v. Haynes*, 8 Pick., 423; *Craddock v. Armor*, 10 Watts, 258. The contract of a surety is collateral to the contract of his principal, and binds the surety for the contract of the principal. It is not merely a contract to perform upon failure of the principal, but binds

the surety equally with the principal for the performance of the contract of the principal. The surety assumes for himself the liability of his principal. And, as Lord Eldon remarks in *Wright v. Simpson*, 6 Vesey Jr., 714, as between the creditor and the surety, the creditor assumes no obligation of active diligence against his principal; and it is the business of the surety, not of the creditor, to see that the principal performs.

This is the legal contract. But, because the surety has no interest in the contract of his principal, and because the creditor or the principal debtor may prejudice the surety by delay, equity will sometimes interfere in behalf of the surety, either against his principal or against his creditor. In such a case the surety may proceed in a court of equity against the principal, to compel him to pay the debt, or against the creditor to compel him to proceed at law to collect his debt from the principal. 1 Story's Eq., § 327; *Wright v. Simpson, supra*; *Hayes v. Ward*, 4 Johns. Ch., 123; *Bishop v. Day*, 13 Vt., 81.

This well established equitable jurisdiction appears to preclude the legal right claimed in this case for the surety: the right to notify the creditor to proceed, and, upon failure of the creditor to do so, to stand released at law. For, if the surety could thus of himself put the creditor in motion, it is difficult to see why he should resort to a court of equity to do for him what he could do for himself.

This power to put the creditor in motion appears to be more safely reposed in the discretion of a court of equity, than vested as a legal right at his option in the surety. The diligence of creditors is generally to be trusted; and when they forbear, it is generally from prudent motives, having regard to all interests concerned. The legal right of a surety to interfere against such forbearance might well be mischievous and oppressive. It is true that the creditor and principal debtor may collude to the prejudice of the surety. That

would be a proper ground for equitable interference. But it is safer, in any case, to leave the surety to the equitable remedy, to be exercised in view of all the circumstances, than to make him his own chancellor to control the action of his creditor.

And it is not to be overlooked, that this jurisdiction of courts of equity does not proceed upon any limitation of the legal right of the creditor, or of the legal liability of the surety, but upon the general principle of equitable jurisdiction, to prevent oppression by the inequitable exercise of legal right.

The legal doctrine that a surety may interfere, on his own motion, between his principal and their creditor, and thus limit his own liability upon his own contract, may be said to be quite modern, and has not been generally adopted. It has always been held by all courts that mere delay of the creditor, without suspending his right to proceed against the principal, will not, in the absence of fraud, discharge the surety. But in *Pain v. Packard*, 13 Johns., 174, the court inaugurated the new doctrine, that notice by a surety to the creditor to proceed against the principal, and failure of the principal to proceed, to the injury of the surety, will operate to discharge the surety from his liability. And this appears to be still the rule of decision in New York. *Remsen v. Beekman*, 25 N. Y., 552.

In *King v. Baldwin*, 17 Johns., 384, SPENCER, C. J., says, " that the creditor is under an equitable obligation, and such is the essence of the contract, to obtain payment from the principal debtor, and not from the surety, unless the principal is unable to pay the debt." This is bringing the contract of a surety very near to the contract of a guarantor. And so WRIGHT, J., who delivers the opinion of the court in *Remsen v. Beekman*, *supra*, reiterating the doctrine, calls the surety a guarantor, and his contract a guaranty.

We entertain, in common with the whole profession, the

most profound deference for the judgments of Chief Justice SPENCER. But even the authority of so illustrious a common-law judge ought not to mislead us. And we cannot but think that he confounded the equitable remedy of a surety with his legal liability. The creditor is indeed under an equitable obligation, which a court of equity will enforce, to obtain payment from the principal debtor; and that may be said to enter into the contract. But the essence of the con-tract is the legal undertaking to pay the debt, which a court of law will enforce; quite consistent with the equitable rem-edy. And it seems to us manifest that the rule in New York interpolates a condition into the contract of the surety, that he will not pay when the creditor neglects his notice to exer-cise active diligence against the principal.

It is not a little singular that the court of chancery in the same state appears to have adhered to the strict legal construc-tion of the contract, while the courts of law were varying it by an equitable construction. After the decision of *Pain v. Packard*, and commenting upon it, KENT, C., says in *King v. Baldwin*, 2 Johns. Ch., 554: "The established doctrine is, that mere delay in calling on the principal will not discharge the surety, provided that delay be unaccompanied with any settled or binding contract for that purpose. .... When the cases all speak of the right of a surety to coerce the creditor to sue, by means of an application to chancery, they imply that he cannot do it by merely calling on the creditor, or by any notice or act *in pais*. The cases of discharge are all founded on the fact of a new agreement between the debtor and creditor, varying the contract by which the security originally stood bound. .... When the surety has ample and well-settled means of relief, through the medium of a court of equity, which will at once compel the creditor to do his duty, it is not necessary, and, as I humbly apprehend, not expedient, to in-troduce a new principle of action between creditor and surety. Will it not open a litigious inquiry as to the certainty and

efficiency of the notice, and does not such a weapon, left at large, in the hands of a surety, afford temptation to vexation, imposition and fraud?" And WALWORTH, C., in *Warner v. Beardsley*, 8 Wend., 194, comments with some severity on *Pain v. Packard*, to which he submits, however, as binding authority in that state. He says that the latter case was decided without argument, and that two, at least, of the judges who concurred in it, afterwards expressly dissented from it; and that when the court of errors reversed the chancellor's decree in *King v. Baldwin*, 17 Johns., 386, although SPENCER, C. J., delivered the opinion, it was in opposition to the votes of all the other justices of the supreme court who took part in the decision.

As WALWORTH, C., remarks in *Warner v. Beardsley:* "In Pennsylvania, where they have no court of chancery to enable the surety to proceed in his own name to compel payment, it has, after much hesitation, been decided that where the principal is solvent, the surety will be discharged, if the creditor does not proceed and collect the debt, on request, or permit the surety to proceed in his name." And he quotes *Dehuff v. Turbitt*, 3 Yeates, 157; *Cope v. Smith*, 8 S. & R., 110; *Gardner v. Ferree*, 15 id., 28. The appellant's counsel also cites, to the same effect, *Wetzel v. Sponsler*, 18 Pa. St., 460.

But we believe that the doctrine of *Pain v. Packard*, as a rule of judicial construction, is confined to those two states. There is a full and learned note to *Pain v. Packard* and *King v. Baldwin*, in the court of errors, by the learned authors of Am. Lead. Cases, by which it appears that the doctrine of those cases does not prevail in England, in the federal courts, or in the courts of any other state in which it has not been adopted by statute. The learned counsel of the respondent cited cases against the doctrine, from Maine, New Hampshire, Vermont, Massachusetts, Illinois, South Carolina and federal courts. A review of these cases would fully sustain our view. And the learned counsel for the appellant cited in support of

his position only cases in New York and Pennsylvania, and in Alabama, Arkansas and Tennessee, which go upon statutes. There are, indeed, *dicta* in some of the cases turning upon statutes, approving the rule of *Pain v. Packard*. But these can avail little for the unsound doctrine, against the strong and universal current of authority outside of the infected states. Indeed, the adoption in those states of such statutes may be regarded as a strong concession against the rule independent of them.

The question was not in *Gardner v. Van Norstrand*, 13 Wis., 543, cited for the appellant, and was, therefore, not considered by the court. Mr. Justice COLE does no more than affirm the general doctrine, that when a creditor does anything inconsistent with the rights of a surety, the surety will be discharged. But he does not attempt to define the rights of the surety, or the duty of the creditor.

There may, undoubtedly, be cases in which the equitable remedy might be too slow a proceeding to avail the surety. But he has always open to him a speedier and more satisfactory remedy, as suggested in *Gardner v. Van Norstrand*, and many other cases. He has an instant right to pay the debt and become subrogated to the rights of the creditor. He then becomes, as against his principal, *dominus litis*. It is said that this may be inconvenient. That is but another way of saying that it is inconvenient to become a surety.

With these views, we cannot doubt that the learned judge of the court below properly excluded the appellant's defense.

*By the Court.* — The judgment of the court below is affirmed.