Mutual Life Insurance Company agt. Davies.

# N. Y. SUPERIOR COURT.

## THE MUTUAL LIFE INSURANCE COMPANY agt. THOMAS A. DAVIES impleaded with others.

*Principal and surety — request of creditor to prosecute — Forbearance — when surety not relieved — Notice to corporation.*

A creditor is under an equitable obligation to obtain payment from the principal debtor, and the surety can, by a proper request, compel the creditor to proceed to recover the debt, and his neglect to do so will exonerate the surety,

But in order to work such result the request to prosecute must be *full and explicit* and accompanied by no conditions.

Thus where a mortgagor who had, through an assumption of the mortgage debt by others, become, in equity, surety as to them, called upon a clerk in the employment of the mortgagee (a corporation) and requested that the mortgage should be foreclosed *if taxes and assessments were allowed to accumulate and should be in arrear*:

*Held*, that this did not amount to a full and explicit request to foreclose the mortgage.

When it is sought to charge a corporation with notice to, or with acts or omissions of, its agents, it must appear that the notice was communicated to, or that the act or omission proceeded from, a person in the employment of the corporation charged with some duty in the premises.

A mere forbearance to collect a debt will not discharge a surety. A creditor may refrain from taking proceedings, or abandon those he has commenced, provided he discharges no lien without releasing a surety.

*General Term, May*, 1878.

*Before*, SEDGWICK, VAN VORST *and* SPEIR, *JJ.*

THE defendant Davies, made a mortgage to the plaintiffs, in 1869, to secure the payment of $44,000, on the first of June,

1870, with semi-annual interest. The mortgage covered lots in the city of New York, owned by Davies.

The mortgagor, subsequently to the execution of the mortgage, and during the same month in which it was made, conveyed the mortgaged premises to the defendant Cudlip. By the terms of the conveyance to him, Cudlip assumed the payment of the mortgage.

The plaintiff was advised by Davies of his conveyance to Cudlip and of his assumption of the mortgage. Cudlip, on the 15th July, 1871, conveyed the premises to John Adriance, subject to the mortgage, which he agreed to pay. Adriance died in November, 1874, but previous to his death he conveyed the premises to Nathaniel Jarvis, Jr., and others, in trust for certain purposes.

The mortgage being unpaid, this action was commenced in April, 1876, for its foreclosure.

The complaint demands judgment against the defendant Davies, personally, for any deficiencies which might arise on the sales of the mortgaged premises. The defendant Davies, by his answer, avers that the plaintiff, without his knowledge or consent, several times extended the payment of the bond accompanying the mortgage, and bound itself not to foreclose the same for a specific time, and that by reason of such extensions, he is released from all liability, on account of the mortgage.

He claims, also, to be released, by the neglect of the plaintiff to foreclose the mortgage, he having as he claims called upon the plaintiff in December, 1874, to ascertain whether there were any taxes and assessments unpaid upon the premises, with the object of having the mortgage foreclosed if such taxes and assessments were in arrear, and was then, as he claims, informed by the agent of the plaintiff, that there were no unpaid taxes and assessments.

He alleges that the company well knew, at the time of his application for information as to taxes and assessments, that his object was to procure the immediate foreclosure of the

mortgage, in case any taxes and assessments were remaining unpaid, and protect himself from any depreciation in the value of the lands.

He claims that, at the time he was so advised that there were no taxes or assessments unpaid, there was in fact a large amount of taxes and assessments outstanding unpaid, and that the plaintiff well knew at the time that such taxes and assessments were liens upon the premises. Defendant further in his answer urges, that up to and within a reasonable time after July, 1875, the mortgaged premises were worth, and could have been sold for more than enough to have paid the mortgage, and all other claims against, and liens upon the premises.

The action was tried at special term, and a judgment of foreclosure was rendered, the defendant Davies being adjudged to pay any deficiency remaining after the application of the proceeds of the sale, according to the directions of the decree. The deficiency amounted to $22,896.63.

The defendant Davies, appeals from so much of the judgment as holds him for the deficiency, and also from the decree itself.

*Edmund Coffin*, for appellant.

*Herbert B. Turner*, for respondent.

*By the Court*, VAN VORST, *J.* — The conveyance of the land by the defendant Davies to Cudlip, and the agreement by the latter to assume and pay the mortgage, created the relation of principal and surety between them. The effect of this transaction was, in equity, to make the land the primary fund for the payment of the mortgage debt, and to place Davies in the attitude of surety only, thereafter (*Johnson* agt. *Zink*, 51 *N. Y.*, 333 ; *Jumel* agt. *Jumel*, 7 *Paige*, 594).

The subsequent conveyance from Cudlip to Adriance, although the latter also assumed the payment of the mortgage,

did not affect Davies' relation as surety.   It gave him the addi-
tional advantage of the agreement of Adriance.   This being
the relation between Davies and the grantees of the premises,
of which plaintiff had notice, although Davies still remained
liable on the bond accompanying the mortgage, yet the plain-
tiff was bound in its dealings with the grantees and others,
in regard to the mortgage debt, to do nothing to the injury of
Davies as surety.

A surety has a right to request the creditor to proceed with-
out delay in the collection of the debt, and if the creditor,
notwithstanding such request, neglects to proceed, and. the
recovery of the debt thereafter has become by such delay
impossible, the surety would be discharged.   Or should it
appear that the creditor's means of recovery have been by
delay, after such request, only partially impaired, then his
obligation against the surety is impaired to the extent of the
loss only ( *Pain* agt. *Packard,* 13 *John.,* 174 ; *King* agt.
*Baldwin,* 2 *John. Chy.,* 554; *S. C.,* 17 *John.,* 384 ; *Warren*
agt. *Beardsley,* 8 *Wend.,* 194; *Herrick* agt. *Borst,* 4 *Hill,*
650 ; *Colgrove* agt. *Tallman,* 67 *N. Y.,* 95).

The reason for this conclusion being that the creditor is
under an " equitable obligation " to obtain payment from the
principal debtor, and the surety can by a *"full and explicit
request"* compel the creditor to proceed to recover the debt,
and his refusal to do so will exonerate the surety (*King* agt.
*Baldwin, supra*).

The learned judge, before whom the trial was had, was
requested by the defendant's counsel to find in substance as
facts, that in November, or December 1874, the defendant
Davies, at the plaintiff's office, informed William G. Davies
(who was attached to the law department of the plaintiff's
business) that he was anxious about the value of the security
and desired to have the mortgage foreclosed if any taxes or
assessments upon the premises were unpaid.   That thereupon
William G. Davies made an examination of the books and
papers of the company and assured the defendant that there

were no taxes or assessments unpaid, or interest in arrear. That defendant informed William G. Davies, that if any taxes or assessments should be unpaid, and in arrear, he wished the mortgage forthwith foreclosed, for his protection, which William G. Davies, thereupon, and at several times thereafter, assured him should be done.

The learned judge declined to find these facts, and the defendant excepted.

We have examined the case to ascertain whether the judge, before whom the witnesses were examined, was justified in refusing to find the facts he was requested.

From such examination we cannot conclude that the judge was in error in declining to find any portion of what was requested of him and the case in that respect may well rest upon his decision.

William G. Davies, who is a nephew of the defendant, and who was frequently consulted by him, in the plaintiff's offices, and elsewhere, in respect to his mortgages, has testified that he could not have informed the defendant that there was nothing against the property, when interest was unpaid, the December interest being in arrear, and that the entries of payment of interest were promptly made in the books. That the company's books did not, at that time, show what taxes or assessments were against the property. That he had not the information to give upon that subject. That he might have said that they knew of none. That he did not understand the defendant to direct or request that the mortgage should be foreclosed. That he very probably made a remark that he wanted it done if taxes and assessments accumulated.

Conceding that the plaintiff requested that the mortgage should be foreclosed if taxes and assessments accumulated and should be in arrear, does that amount to a "*full and explicit*" request to the plaintiff to foreclose the mortgage?

The request, it must be observed, was made of a person, who, under the evidence, had no duty, in his relations to the plaintiff, in that direction.

The president and finance committee of the plaintiff, were the persons who had the control of such matters; they directed the foreclosure of the company's mortgages.

The person of whom the request was made was neither president, nor a member of that committee; he had no author-ity to direct or order the foreclosure of a mortgage.

When a request of this nature is to be made of a corpora-tion, to be effective it should be formally made and communi-cated to one charged with the subject. This is the more important as a disregard of the request is followed by a release of a security. In large corporations there must needs be a systematic distribution of duties among numerous officers and agents.

And persons seeking to charge a corporation with notice to, or with acts or omissions of its agents, must see to it that the notice is communicated to, or that the act or omission pro-ceeds from, a person charged with a duty in the premises.

By way of illustration, a communication made to the dis-count clerk of a bank with respect to matters clearly not under his control, but within the specific duty of the notary, paying or receiving clerk, could not well be considered a good notice to the bank, by which it would be absolutely bound. When a corporation is engaged in making investments of money, the duty of calling in loans is quite as important as that of making them. The decision, in each instance, must rest in responsible hands. The plaintiff intrusted this duty to its chief officer and principal committee, with whom the defendant, who was not a stranger to the plaintiff's officers, should have formally communicated, and especially so, as his request to foreclose was conditional, accompanied with the added service, care and judgment with respect to taxes and assessments.

But again, the defendant could not, through a notice to or request of William G. Davies, cast upon the plaintiff the duty of watching taxes and assessments so as to guard against their accumulation.

That was a matter about which the defendant might himself have inquired, as his interest prompted, at the proper municipal offices where reliable records are kept.

The evidence shows that the books of company did not, at that time, disclose what taxes and assessments were returned against the property, and that the plaintiff had, in fact, no information to give upon that subject, and could only obtain it by an inquiry at offices, equally open to the defendant.

The person, in the plaintiff's employment, with whom the defendant communicated, according to his testimony, was not assigned to any duty of the nature of the one sought to be imposed by the defendant. He was the assistant to the solicitor of the company in its law department. This department examined vouchers, the surrender of death claims, and had the supervision of all litigated business, and general direction of it. He had no right, as assistant to the solicitor, to order the foreclosure of a mortgage for non-payment of taxes.

Had William G. Davies, therefore, chosen to act in the direction requested, it must have been for the defendant, and in his interest, and for his omission, if any, the plaintiff is not liable.

But it is urged, by the learned counsel for the defendant, that the plaintiff extended, for a time, the payment of the mortgage, at the request of Mr. Sage, the owner of a subsequent incumbrance.

It appears that the plaintiff, in January, 1875, was about to foreclose the mortgage, and had placed the same in the hands of its attorneys for that purpose. At this stage Mr. Sage came forward and paid the interest in arrear and the expenses of the preliminary proceedings, and the mortgage was returned by the attorneys to the company. Mr. Sage, in August following, paid another installment of interest on the mortgage.

He testified that he was desirous of getting an opportunity

to investigate the value of the property, and to that end made these payments.

It is not shown that any agreement was made to extend the payment of the mortgage for a day.

The plaintiff simply forbore the collection of the debt which was due. Howsoever such forbearance of the creditors may prejudice the surety it will not, of itself, have the effect to discharge him.

A naked promise to forbear, if one was made, would work no change in the antecedent relations of the parties.

The distinction between an agreement to give time, and time given inspection of an agreement is important.

A creditor may refrain from taking proceedings, or abandon those he has commenced, provided he releases no lien, without discharging a surety (2 *Amer. Leading Cases* [*Hare & Wallace*], *notes to Pain* agt. *Packard, and King* agt. *Baldwin, pp.* 390 – 394).

There is nothing to show that the plaintiff was restrained by any agreement, for any length of time, from collecting the mortgage, and the defendant could, notwithstanding the payment of the interest in arrear by Sage, have at any moment paid the debt, and have been subrogated to the plaintiff's rights and remedies under the mortgage (*Calvo* agt. *Davies, in the court of appeals, per* ANDREWS, J.).

The manuscript opinion in that case has been handed up with the papers.

This opinion fully recognizes the position and rights of the defendant *Davies, as surety*, upon the facts appearing as above stated.

The judgment for a deficiency in this case is doubtless owing, in a large degree, to the accumulated taxes and assessments upon the premises, which were by the judgment of the special term directed to be paid out of the moneys arising on the sale of the land.

Some of these assessments accrued as early as the year 1872, and a considerable portion of the whole was a matter of record

Mutual Life Insurance Company agt. Davies.

in the proper city offices, in December, 1874, when the defendant had the interview with the assistant solicitor, in the office of the company.

However unfortunate the result may prove to the defendant, we cannot think that the case would justify this court in casting upon the plaintiff the burden of paying these liens.

If the plaintiff was at all at fault in allowing them to accumulate, through its forbearance to foreclose, when the assessments first appeared, the defendant is not wholly free from responsibility.

If the existence of these liens depreciated the security of the mortgage, and furnished a reason for its foreclosure, the defendant, whose pecuniary interest in the matter was large, could have readily acquired a knowledge of them, and by a reasonable and explicit request to the plaintiff, could have secured himself against any loss whatever.

We fail to discover any error in the proceedings on the trial or in the judgment.

Judgment affirmed with costs.

SEDGWICK and SPEIR, concurred.