*112 The leading features of their arguments, and the principal authorities cited by them, are noticed in the opinion of the Court, which was delivered by
Tilgiiman C. T.
This case may be considered under , . r . three points of view:
1. The neglect to bring suit against the principals, without regard to the request of Frederick Smith, one of the defendants.
2. The same neglect, after the request oí the said Frederick Smith.
3. The neglect to give notice of the bond to the administrators of Godfrey Smith, and demand payment of them.
I take it to be well settled, that the bare omission to bring suit against the principal, will not discharge the surety. It is the business of the surety to look to the principal, and if he thinks himself in danger, to apply to the creditor, and insist on his taking measures for the recovery of the debt. But without such demand by the surety, he has no equity against the creditor. The surety may have recourse to equity to compel the creditor'to bring suit against the principal. Therefore, when a creditor makes an agreement, by which he disables himself from bringing suit, without the consent of the surety, he acts against equity, and ought not' to hold the surety responsible. But nothing short of an engagement by which his hands are tied and a suit prevented, can discharge the surety. It was indeed decided by the Court of Common Pleas of Northumberland county, in the case of Thursby v. Gray’s administrators, that an omission to bring suit for something more than two years after the bond was due, was a discharge of the surety ; but the judgment was reversed by this Court sitting at Sunbury, in the Middle District, it the year 1808, (4 Yeates, 518,) and that our decision was right, will clearly appear from a review of the principal cases on this subject. In The People v. Jansen, in the year 1811, the opinion of the Supreme Court of New Tork was delivered by Thompson J. (7 Johns, 338,) who said, “ that mere delay in calling on the principal will not discharge the surety, and this is a sound and salutary rule both at law and in equity.” In Hunt v. United States, *113 (in the year 1812, 1 Gallison, 34,) Mr. Justice Story dedared, “ that in no case which he could find, (and we all know the depth of his researches,) had the mere delay to require payment, without any contract for that purpose, been held to vary the responsibility of the surety.” In King v. Baldwin, (2 Johns. Ch. Ca. 559, in the year 1817,) Chancellor Kent lays it down as an established doctrine, <(- that delay in calling on the principal will not discharge the surety, provided the delay be unaccompanied with any settled and binding contract, for that purpose.” And in support of this opinion, he cites the opinion of Baron Wood, 10 East. 34, of Judge Story, in Hunt v. United States, referred to before, of Thompson J. in The People v. Jansen, also referred to before, and of Lord Eldon, in Wright v. Sampson, 6 Ves. 734. The expressions of Lord Eldon are, that he “ never understood that as between obligee and surety there was any obligation of active diligence against the principal. The surety is a guarantee, and it is his business to see whether the principal pays, and not that of the creditor.” From all these authorities then, and from the reason of the thing divested of all authority, I am satisfied that the defendants have no ground for discharge from the obligation, on the naked circumstance of delay in bringing-suit. This brings us to the second point. Are the defendants discharged in consequence of the plaintiff’s neglecting to bring suit against Henry K. Helmuth, the surviving partner of Godfrey Smith, after what passed between him and Frederick Smith, one of the defendants, at his stall in the market ? Although the surety is positively bound for the payment of the whole debt, and there is no distinction in the bond between principal and surety, yet it would be against good conscience for the obligee to refuse to bring suit against the principal, though requested to do so by the surety, who was apprehensive that the debt might fall upon him by delay. The security has a right to expect that wh'-n the day of payment comes, the principal shall not be indulged with farther time at his expense and against his will. Chancery, therefore, on the application of the surety, will compel creditors to bring suit against the principal. This is conceded by the counsel for the plaintiff, and indeed it is a position too plain to be denied. But suppose no application be made to chan *114 eery, but the surety demands of the creditor, in pais, to bring • suit against the principal, and the creditor refuses or neglects it; is the surety discharged from his responsibility ? This has been much controverted in the Supreme Court of New York, and has never been expressly decided in Pennsylvania. In Pain v. Packard, (13 Johns. 174, in the year 1816,) the case was, that the surety requested the creditor to sue the principal, who neglected to do it, whereby, the opportunity of recovering against the principal was lost. It was held, that the surety was discharged. This was in the Supreme Court of New York. The same point was afterwards brought before the Chancellor, in King v. Baldwin, (2 Johns. Ch. Cas. 559, in the year 1817,) who differed from, the Supreme Court in opinion. The Chancellor, with his usual industry and accuracy, reviewed all the cases which had been decided, and declared, “ that there was no case in the English law, in which the personal application of the surety to the creditor, was held to be compulsory on the creditor, at the hazard of discharging the surety.” But the decree in King v. Baldwin, was reversed in the Court of efrors, who held, that the surety was discharged. In this reversal, however, the Court was much divided, the decision having been carried only by the casting vote of the Lieutenant Governor. It is worthy of observation also, that of all the Judges of the Supreme Court, the Chief Justice (I presume) alone was in favour of the reversal, and that Platt J., with great candor and liberality, availed himself of the opportunity of declaring that he was satisfied that he had been wrong in the case of Pain v. Packard. This declaration takes something from the authority of that case ; yet it must be confessed, the Chief Justice defended that opinion with great strength of argument. Between such high conflicting authorities, it would be a painful task to decide, and I am happy in being relieved fron¡i it by the peculiar nature of our judicature, which has no Court of chancery. Under such circumstances, I cannot help supposing that Chancellor Kent would have agreed that a demand in pais would be sufficient. He not only granted that in equity the surety might compel a suit against the principal, but founded his opinion upon that very circumstance. He thought a request in pais insufficient, because recourse might have been had *115 So chancery. But where there is no Court of chancery, the equity of the surety must be sacrificed, unless a demand in pais be sufficient. In Pennsylvania, the Court hold themselves bound to administer equity, in all cases where the forms of law do not restrain them. They Cannot compel the specific performance of an agreement, because they cannot take cognisance of a bill in equity. But they come as near it as they can, In the action of ejectment, for instance, which is very little tramelled by form, they consider that as actually done, which a Court of equity would decree to be done. They will permit a purchaser of land to recover it from the seller, when he has paid all the purchase money according to the Contract or tendered it, and brings it into Court. So in an action on a bond, they will permit the obligor to make any plea which would entitle him to relief in equity. On the same principle, a surety ought to be relieved, who has done every thing to enforce his equity, which the nature of the case admitted. But the counsel for the plaintiff deny that the surety has any remedy in Pennsylvania, but by paying the debt and taking an assignment of the bond, and in support of this opinion, they rely on the cases of Dehuff v. Turbett's executors, 3 Yeates, 158, and The Commonwealth v. Wolbert, 6 Binn. 292. Dehuff v. Turbett was decided by Yeates and Brackenridge Justices, at a Circuit Court at Lancaster, April, 1801. I have considered that case attentively, and do not think it warrants the inference drawn by the plaintiff’s counsel. The surety had requested the creditor to bring suit against the principal, and the creditor answered, that when the principal, who was then absent, came home, he would make application to him and bring suit, unless he paid the interest and found new sureties for the principal. With this assurance the surety was well satisfied, and the Court submitted to the jury to decide whether the suit had been brought against the principal in a reasonable time. This case, therefore, seems to have been determined on its own particular circumstances. It is true, however, that Yeates J. is reported to have expressed himself as follows, after having submitted the case to the jury, in the manner before mentioned. “We cannot say, sitting as a Court of law, that a creditor, neglecting to sue his principal debtor on the requisition of his surety, *116 thereby discharges his surety in general, and we think it will require great Consideration, before such a rule is adopted.” To make the most of this, it is not a decision, but rather a caution that the law was not settled. But it really does appear to me, either that the words said to have been uttered by that venerable Judge, must have been spoken in very great haste, or there must be an inaccuracy in the report. For no man knew better than Judge Yeates, that he was sitting not only in á Court of law, but of equity, and that by the established usage of our Courts, the defendants might protect themselves by an equitable defence. In The Commonwealth v. Wolbert, it was not decided, nor was it necessary to decide, whether a surety is discharged by the neglect of the creditor to bring suit, after request by the surety. The report of that case will shew, that I expressly delined giving an opinion on that point, and Judge Yeates said nothing decided. His words are these : — “ The rule in equity in English cases, is admitted, as to indulgence given to the principal debtor ; but I do not know that we have extended these cases in their full latitude.” It appears then, that Judge Yeates has given no positive opinion on this subject, though we mav discover the inclination of his mind. But in opposition to this inclination, may be placed the opinions of Shippen and Bradford, Justices, in the case of Eddowes v. Niell, at Nisi Prius, in the year 1793, 4 Dall. 133. They were of opinion, “ that if the obligee be requested by the surety to proceed against the principal, in order to save the debt, and he neglects or refuses to do so, the surety both in law and in equity, is exonerated.” From a consideration therefore of all the adjudged cases, and the inconvenience and injustice that would flow from establishing the principle that no request in pais would be sufficient to give the surety an equity against the creditor, I am of opinion, that an equitable defence may be supported on a request in pais, provided it be proved clearly and beyond all doubt, and provided the request be positive, and accompanied with a declaration that unless it be complied with the surety will be considered as discharged. But I give no opinion at present, whether even all this would be sufficient, if it should appear that the insolvency of the principal would have prevented the recovery of the debt, if suit had been brought against .him when re *117 quired. I need hardly add, that the evidence in the case before us, was quite insufficient to bring the defendants within the rule I have laid down. It did not appear at what time the request was made by Frederick Smith, nor that a suit was requested at all. The words of the witness are, that the plaintiff told him, Frederick Smith said, he should call on Henry K. Helmuth and demand (or ask) the money ; not that unless suit was brought, the defendants should consider themselves as discharged. We have no right to say that a request of this sort should be void unless in writing, but certainly it would be best to make it in writing, because of the difficulty of establishing the truth, with sufficient accuracy by parol evidence ; and when the penalty is so great on the creditor as the loss of his debt, the surety who sets up this defence should be held to strict proof.
I come now to consider the third question : Whether the defendants are discharged by the plaintiff’s omission to demand payment from the administrators of Godfrey Smith. Godfrey Smith was the brother of the defendants, and son of f. F. Smith, the testator. Why did not the defendants request the plaintiff to demand payment from the estate of their brother ? Or rather, why did they not pay him without demand, as they were the administrators of their brother l It is said, they did not know of their father’s being bound in this bond. Possibly it may be so, but of this we are left to conjecture. So on the part of the plaintiff, it is said, that he did not know of the advertisement of the administrators of Godfrey Smith, desiring all creditors to bring in their claims. And there is no evidence bringing this notice home to him. The plaintiff had his interest regularly paid by H. K. Helmuth, the surviving partner of G. Smith, and as long as his credit remained good, the plaintiff might be easy, and not think of resorting to any other person, tie might well suppose that the executors of f. F. Smith had no desire that he should resort to the estate of their brother, because they had never expressed such desire, and he could have no reason to suppose that they were ignorant of their father’s being bound in the bond. It is true, an Act of Assembly provides that those persons who do not exhibit their claims within a certain time after the administrators have given notice by public advertisement, shall be postponed to those *118 who make such exhibition. But if there had been no such provision, we know that the administrators might confess judgment to a creditor who brought suit, and thus, in case of a deficiency of assets, the creditor who did not bring suit m‘Sbt be cut out. And yet, no case has been shewn, where an equity arose to a surety in a bond, because the obligee had omitted to bring suit against the administrators of the-principal, and thus lost the money which might have been recovered from his estate. Whether the principal be alive or dead, it is the business of the surety to keep an eye on his affairs, and request the creditor to bring suit, whenever he thinks himself in danger. I do not say that there may not be cases of collusion, in which the conduct of the creditor would be deemed fraudulent; but such cases would turn on a different principle. In the case before us, it cannot be said, that the plaintiff has voluntarily relinquished a fund, to which he ought to have resorted in ease of the security. The law must be presumed to be as well known t® the surety as the creditor ; and no request having been made by the surety, there was no obligation on the plaintiff to resort to the estate of Godfrey Smith. Under all the circumstances of this case, I am of opinion that the defendants have shewn no equity to discharge them from the bond executed by their testator, and therefore judgment should be entered for the plaintiff.
Judgment for the plaintiff.