The opinion of the court was delivered by
Gibson, J.
' This action is brought on two bonds given by the defendant’s testator and his son Fdam Hawk, for the. price of a tract of land purchased by Fdam, at the sale of the real estate of John Kerper, held under an order of the Orphans’ Court: in which the defendant’s testator was bound as a surety. ' At the trial one ground of defence relied on, was, that the plaintiffs had. indulged the principal with time, after they had been required to bring suit against him; and in support of this the defendant offered a certain Frederick Wolfersberger to prove, that in conversation with the plaintiffs, they admitted that Michael Hawk was only a surety in the bond, and that Fdam Hawk was the principal; and that the witness, as the guardian of Philip Kerper, one of the heirs of John Kerper, called on the administrators of John Kerper, (the obligees and plaintiffs in the suit,) to prevail on them to collect the amount of the bonds from Fdam Hawk, the principal; but that they refused to do so. The evidence thus offered was- *37 admitted, and new forms the subject of the first bill of exceptions. It is certain that an obligee who being solemnly warned by the surety, neglects to sue the principal in due season, loses the benefit of his security, as against the surety: and what sort of warning or demand is necessary for that purpose, was fully considered by this court in Cope v. Smith and others, Executors of Smith, 8 Serg. & Rawle, 110. It is, therefore, necessary at present only to say, that the demand must come from the. surety, or some one authorised by him to make it, and not from a third person. Here Wolfersberger, who made the demand, acted in the matter, as the guardian of one of the heirs of Kerper, and had nothing to do with the sure-The evidence ought therefore to have been excluded.
The second bill of exceptions contains matter which is said to have been irrelevant to the issue, but which appears to have been directly operative and proper to show that Martin Thoma, a witnes on the part of the plaintiffs, was interested; and the third bill of exceptions, which was for rejecting Thoma as witness, whose interest is now admitted, is abandoned.
The exceptions to the charge are: 1. That the court directed the jury that the bonds on which the suit is founded, are merely joint, and not joint, and several; and consequently that the action against the representatives of one obligor cannot be sustained without averring and proving that the other is dead, and that the defendant is the personal representative of the surviving obligor: 2. That if the bonds were not joint and several that still the defendant could take advantage of that circumstance only by a plea in abatement; and that the court, having been required, ought so to have directed the jury.
I am of opinion these bonds were joint and several. The construction of an obligation like that of every other instrument depends on the intention of the parties, as collected from their words, and where the intention of the parties is plain, it is under particular circumstances carried into effect even contrary to the express words. Butler v. Wigge, 1 Saund. 66 — 7. Both bonds are in this case exactly alike; and the obligors set out with an acknowledgment of indebtedness, in words which denote no intention that there should be a severance of their responsibility: but in the conclusion, they use these words: “ to which payment well an truly to be made or done; we bind ourselves, and each of our heirs, executors and administrators.” Here it must be conceded that if the word “each” were to be transposed so as to be grammatically applicable’ to the persons of the obligors instead of being exclusively applicable to the persons of their-representatives, these obligations would be several as well as joint. Now this word “ each” must be taken as having been intended to have some operation and legal effect; and if it can have none where it stands, we are bound to suppose that this particular collocation of the words used, was purely accidental, and contrary to the real intent and meaning of the parties. But *38 the word can have no operation where it stands; for it is impossible that a bond shall be joint as to the immediate parties, and several as to their representatives, survivorship as respects the remedy being an incident of every obligation which cannot be dispensed with, even by the agreement of the parties, as the law will nót suffer its forms to be violated by the introduction of new and unheard modes of proceeding. To permit the personal representatives of a deceased obligor to be joined in an action against the survivor; or all the representatives of the immediate parties, where the immediate parties are all dead, to be sued jointly or severally at the election of the obligee, would involve the administration of the law in absurdity and endless perplexity. Such an anomly could never be tolerated. We must then intend that the word “ each” was designed to be applicable to the persons of both obligors wherever they are named; and if that be so, the consequence is unavoidable that these obligations are several as well as joint. This result is not obtained by a process of artificial reasoning inconsistent with the real meaning of the parties. Let any one read these obligations for himself, and his first impression will undoubtedly be that the obligors actually intended to bind themselves jointly and severally.
The decision of this point would render a decision of the question raised by the remaining exception unnecessary, if on account of its difficulty I were disposed to elude it. But it is extremely clear that if these bonds were only joint, the defendant could have availed himself of that circumstance only by a plea in abatement; for though it is expressly averred in the statement, which is in lieu of a declaration that both obligors sealed the bonds, it is not admitted in any part of the pleadings that Adam Hawk is still alive, or that he survived the defendant’s testator: in either of which events only, could the defendant move the matter in arrest of judgment, and consequently assign it as error here. But hers the error is assigned by the plaintiffs to the charge of the court, which was wrong in any event; for even where the defect appears on the record the defendant cannot avail himself of it in evidence before a jury, unless perhaps where he has actually pleaded it in abatement: the proper course being to move in arrest of judgment. But the law is considered and the authorities stated by Mr. Williams in a note to Cabell v. Vaughan, 1 Saund, 291, b. (note 4,) with such clearness and accuracy, as to render any particular investigation of the subject here altogether unnecessary.
Judgment reversed, and a venire de novo awarded.