GEORGE E. HUEY, impleaded with others, Appellant, against OVID PINNEY, Respondent.

APPEAL FROM THE DISTRICT COURT OF HENNEPIN COUNTY.

Parties to written instruments cannot lessen or extend their obligations or liabilities by any verbal understandings or conditions they may enter into before or at the time of their execution, but must be tried upon the law applicable to the position they have assumed in the writing. And an allegation that a party signed a note as surety, "upon the express condition, known to Plaintiff, that the note should run but a short time only," will not affect the duties of the holder when such condition does not appear in the note, or in another instrument in writing of equal obligation therewith.

The relation of principal and surety involves the utmost good faith and confidence, and makes it the duty of the creditor and principal debtor to carefully consider and protect the rights of the surety in all their transactions relating to the debt. If the creditor does any act injurious to the

Huey v. Pinney.

surety, or inconsistent with his rights; or if he omits to do any act, when required by the surety, which his duty enjoins him to do, and the omission proves injurious to the surety; in all such cases the latter will be discharged, and he may set up such conduct as a defence to any suit brought against him, if not at law, at all events in equity.  By the "acts which the creditor's duty enjoins him to do," is meant those duties which are imposed by law, and which grow out of the legal relation of principal and surety.

The creditor is under an equitable obligation to obtain payment from the principal debtor and not from the surety, unless the principal is unable to pay the debt.  Mere delay on the part of the creditor to prosecute the principal will not discharge the surety, even if thereby the principal become insolvent and the surety is deprived of his redress : yet equity will interpose for good cause shown, and compel the creditor to sue the principal before resorting to the surety ; but this right is coupled with the condition that the surety shall fully indemnify the creditor against loss from a fruitless suit against the principal.  Under our practice the request to sue should be accompanied by a tender of indemnity, but the request need not be in writing.

It seems, however, that under *sec.* 35, *p.* 629, *Stat. of Min.*, a surety has the power in his hands to sue the maker and holder of the obligation upon which he is bound as surety, to compel the maker to pay the holder, and he is not compelled to demand that the holder himself bring the suit.

An extension of time upon a binding consideration to the principal debtor, will discharge the surety.  And an allegation in an answer, "that the Plaintiff, at the request of the principal, and without the consent of the (surety) Defendant, after the maturity of the note, extended the time of payment thereon to the said principal, for a binding and valuable consideration," is sufficient to advise the Plaintiff of the nature of the defence, without alleging the time for which the extension was granted, by whom it was to be proven or the precise consideration paid.

Points and authorities of Appellants :

I. The order denying a new trial was erroneous, because the Court below erred in excluding any evidence on the part of the Defendant, and also in granting Plaintiff's motion for judgment upon the pleadings.   The answer disclosed a perfect defence to the action.   The rule or criterion, says Harris, J. in *Shroeppel vs. Shaw*, 3 *Comst.* 462, by which to determine in any and every case whether a creditor has done or omitted to do any act which will have the effect to exonerate the surety, is stated with perfect accuracy by Judge Story, as follows :  " If a creditor does any act injurious to the surety or inconsistent with his rights, or if he omits to do any act, *when required by the surety*, which his duty enjoins him to do, and the omission proves injurious to the surety, in all such cases the latter will be discharged, and he may set up such conduct as a defence to any suit brought against him, if not at law, at all events in equity."   1 *Story's Eq. Jur.*, *sec.* 325.

In this case, as Woodman was solvent, it was Plaintiff's duty to have enforced prompt payment against him when requested, because—1st. The equitable obligation arising out of his relation to Huey as surety required this.   Such was the essence of the contract (per Spencer, Ch. J., in *King vs. Baldwin*, 17 *John.* 384, and per Sutherland, J. in delivering the opinion of the Court in *Ruggels vs. Holden*, 3 *Wend.* 216.) 2d. This was the *express* condition upon which Huey became surety—vide answer.

The neglect. to prosecute and collect of Woodman while solvent, and the admitted consequent loss and injury to the Defendant, discharged the surety. *Pain vs. Packard*, 13 *Johns. R.* 174; *King vs. Baldwin*, 17 *Id.* 385, *and cases there cited; Hoffman vs. Hulburt*, 13 *Wend.* 377; 3 *Wend.* 216, *cited above;* 5 *Hammond*, 207; 3 *Comst.* 462; 9 *Porter*, 334; 8 *Serg. & Rawle*, 110; 10 *Wend.* 162; 4 *Hill*, 650; 3 *Minn.* 18; 6 *Miss.* 46; 3 *Barr.* 264, 404.

It was always allowable for the surety to go into a Court of Equity and compel the creditor to collect of the principal debtor, upon the *principle* of course, that it was his duty to force payment of the principal when he could. *Story's Eq. Jur.*, sec. 327, *and King vs. Baldwin*, 17 *Johns. and cases there cited.'* And in our State, where the same Court proceeds upon equitable and legal principles, the doctrine of *Pain vs. Packard* should be followed, as in Pennsylvania. *Cope vs. Smith*, 8 *Serg. & Rawle*, 110, cited and commented on in 2*d Smith's L. Cases*, 3*d Ed.* 268; 1 *Watts*, 143; *Wilson vs. Glover*, 3 *Barr.* 404; *Granawalt vs. Kreider*, 3 *Barr.* 264; 1 *Smith's L. Cases*, 268 to 270, *and cases cited;* 5 *Hammond*, 207–215.

The extension of time also discharged the surety. *Story's Eq.* sec. 326, *and cases cited in the note;* 7 *Wend.* 289; 7 *Hill R.* 250; 10 *Paige Ch. R.* 11 *et. seq.;* 3 *Denio*, 378, 512; 4 *Comst.* 315.

The defence in this case was sufficiently pleaded. *Pain vs. Packard*, 13 *Johns.* 174. In determining its effect the allegations of a pleading shall be liberally construed, with a view to substantial justice between the parties. *Comp. Stat.* sec. 79, *p.* 542; 3 *Selden*, 476.

The defect, if any existed in the answer, was all that should have been reached on motion under *sec.* 80, *p.* 542, *Comp. Stat. and not on the trial.*

The objection raised by the Court below that it did not appear from the face of the note that Huey signed as surety, and that the fact could not be proved by parol, was untenable in law. 4 *Hill*, 650; 4 *Comst.* 315, *and cases there cited by Respondent's Counsel;* 2 *Selden's R.* 44; 1 *Minn.* 369; 9 *Met.* 511–517; 2 *Minn.* 145, 146.

Besides, the Plaintiff is estopped by the positive averment

in his pleading from denying this relation; and as to the second count, the legal presumption is that the note disclosed the relation.

II. The judgment was entered contrary to law.

Points and Authorities of Respondent:

The motion for a new trial in this action was properly denied, because the answer is *insufficient.*

*First.*—Because the allegation in the answer that the Plaintiff neglected to sue the principal Defendant, Woodman, upon the request of Defendant Huey, who is his surety, constitutes no defence to this action, because the said request is not alleged to have been made in writing, nor to have been accompanied with a tender or offer of a bond of indemnity, or any indemnity whatever to Plaintiff to insure him against the hazards of a fruitless suit, and for the payment of the costs and disbursements incurred therein. *King vs. Baldwin,* 2 *John. Chan.* 554; *Hayes vs. Ward,* 4 *Ib.* 123, 131, 132; *Beardsley vs. Warner,* 6 *Wend.* 610; *Ib.* 8 *Wend.* 194; *Schreoppel vs. Shaw,* 3 *Comstock,* 446; *Bull vs. Allen,* 19 *Conn.* 101; *Taylor vs. Beck,* 13 *Illinois,* 376; *Stump vs. Rogers,* 18 *Ohio,* 533; *Ohio Life Ins. Co. vs. McCague, Ib.* 64; *Taft vs. Gifford,* 13 *Metcalf,* 187; *Leavitt, vs Savage,* 16 *Me.* 72; *Bellows vs. Lovell,* 5 *Pick,* 307; *Crane vs. Newhall,* 2 *Pick.* 614, (*n.* 1); *Chitty on Contracts,* 468, *original paging;* 1 *Story's Eq. Ju.,* secs. 326, 327; *Wright vs. Simpson,* 6 *Vesey,* 734; *U. States vs. Kirkpatrick,* 9 *Wheaton,* 720; *McLemon vs. Powell,* 12 *Wheaton,* 554; *Joslin vs. Smith,* 3 *Weston,* (*Vt.*) 353; *Bishop vs. Day, Ib.* 81; 2 *Story on Con.,* secs. 881–887; *Willard's Equity,* 108; *Calvert vs. Gordon,* 3 *Man. & Ryl.* 124; 2 *Barn. & Cres.* 497; *Loveland vs. Knight,* 3 *Car. & Payne* 106. *In the matter of Samuel H. Babcock,* 3 *Story's R.* 398; *Alcock vs. Hill,* 4 *Leigh,* 623; *Johnson vs. Thompson,* 4 *Watts,* 446; *Reynolds vs. Ward,* 5 *Wend.* 501; *Locke vs. U. States,* 3 *Mason,* 446; *Picket vs. Sand,* 2 *Bailey,* (*S. C.*) 608; *Moore vs. Broussard,* 20 *Martin,* (*La.*) *R.* 277; *Davis vs. Higgins,* 3 *N. H.* 231; *Frye vs. Barker,* 4 *Pick.* 382; *Oxford Bank vs. Lewis,* 8 *Pick.* 458; *Blackstone Bank vs. Hill,* 10 *Pick.* 129; *Fullam vs. Valentine,* 11 *Pick.* 156; *Buchanan vs. Bordly,* 4

*Har. & McHen.* 41; *Hunt vs. U. States,* 1 *Gallison,* 32; *Cope vs. Smith,* 8 *Serg. & Raw.* 110; *Com. vs. Wolbert,* 6 *Binney,* 292; *Fullerton vs. Matthews,* 15 *John.* 433; *Powell vs. Waters,* 17 *John.* 176; 4 *McCord's R.* 458; *Braman vs. Howke,* 1 *Blackf.* 393; *Strafford Bank vs. Crosby,* 8 *Greenleaf,* 191; *Kennebec Bank vs. Tuckerman,* 5 *Greenleaf,* 130; *Claggett vs. Solomon,* 5 *Gill. & John.* 314; *Stout vs. Ashton,* 5 *Monroe,* (*Ky.*) 252; *Norris vs. Cumming,* 2 *Randolph* ( *Va.*) 323; *Freeman's Bank vs. Rollins,* 13 *Me.* 202; *Sibley vs. McAlister,* 8 *N. H.* 389; *Hubbell vs. Carpenter,* 1 *Selden,* 171; *Spriggs vs. Bank, &c.,* 14 *Peters,* 204; *Huntress vs. Patton,* 20 *Me.* 28; *Bangs vs. Strong,* 4 *Comstock,* 315; *Agricultural Bank vs. Bishop,* 6 *Gray,* (*Mass.*) 319; *Creath vs. Simms,* 5 *Howard U. S.* 192; *Chitty on Bills,* 409, *original paging.* And see particularly 2 *Am. L. Cases,* 4th *Ed., pages* 363 and following, where the *whole* subject is ably discussed and fully exhausted.

*Second.*—Because even if the defence that the Defendant Woodman was solvent at the time of the request to sue and became subsequently insolvent before the commencement of this action, were a good one when *properly pleaded,* it is not in this case, because the answer does not allege, as is necessary in order to be good, that the Defendant Woodman, at the time of the said request was *solvent within the jurisdiction of the State in which the suit against the said Defendant Huey is instituted. Warner vs. Beardsly,* 8 *Wend.* 194; *Ib.* 6 *Wend.* 613.

*Third.*—Because it *affirmatively appears* by said answer that this Defendant (Huey) *had full knowledge of the situation and affairs of the said Woodman, and was himself guilty of negligence* in not paying the note, and then collecting it of said Woodman. 1 *Parsons on Contracts, and cases cited.* And because it does not appear by said answer that Defendant Huey had not been secured against all risk by said Woodman. 1 *Parsons on Contracts,* 512. Because being an answer in the nature of the old plea of confession and avoidance it must be " *certain to every intent in particular.*"

*Fourth.*—Because the answer merely alleges that there was an extension of time by the Plaintiff to said principal Defendant Woodman by an agreement between them, but

*does not set forth the existence and nature of the consideration with sufficient precision to enable the Court to judge of its sufficiency.* 2 *Am. L. Cases,* 4th *Ed.* 415, 416; *Marshall vs. Allen,* 25 *Vermont,* 328.

*Fifth.*—Because an answer setting up an extension of time to the principal, being in the nature of the old plea of confession and avoidance, *must definitely and precisely fix the time of the extension,* which the answer in this action does not do. 1 *Parsons on Con.* 513, *note y; Miller vs. Stone,* 2 *Penn. State R.* 286; *Powell vs. Price,* 3 *Richardson L. R.* 121; *Waddington vs. Gray,* 7 *Smeedes & Marshall's R.* 522; *Gardner vs. Watson,* 13 *Illinois,* 347; *Waters vs. Simpson,* 2 *Gilman's R.* 570; *People vs. McHatton,* (*Ill.*) 638; *McGhee vs. Metcalf,* 12 *Smeedes & Marshall's R.* 535.

F. R. E. Cornell, Counsel for Appellant:

L. M. Stewart, Counsel for Respondent.

*By the Court*—Flandrau, J.    The complaint in this action is upon two promissory notes, dated July 9th, 1857— one payable on the 27th day of October, and the other on the 27th day of September, then next.   The notes are made by the Defendants Woodman and Huey, to the order of the Defendant Murphy, and endorsed by him.   The complaint alleges in regard to both the notes that Huey signed them as surety.

The Defendant Huey answers and admits that he signed the notes as surety, as alleged in the complaint, but avers that he so signed them upon the express condition, known to the Plaintiff, that the notes should run but a short time only, and that the Plaintiff should proceed promptly to enforce the collection of the said notes when due against the principal, Woodman.   And that shortly after the notes fell due the Defendant Huey called upon the Plaintiff personally, and notified and ordered him to proceed and collect the said notes without delay, and that he told the Plaintiff that the notes could be collected at that time of the principal Woodman, but the Plaintiff refused so to do; and at the request of the

Defendant Woodman, without the consent of Huey, after the maturity of the notes, extended the time of payment thereon to Woodman, for a valuable and binding consideration from Woodman. The Defendant Huey also charges that at the time he requested the Plaintiff to proceed against Woodman he was solvent, and the notes were collectable against him by due process of law, and that he has since become insolvent, &c.

The reply puts in issue the allegation of the answer as to the extension of the time of payment on the notes to Woodman.

On the trial the Plaintiff moved for judgment on the pleadings, and the Court granted the motion.

There are two defences attempted in the answer. First, that the Defendant Huey as surety was discharged from his obligation by reason of the refusal of the Plaintiff to prosecute the principal debtor when requested to do so, he being solvent at the time of the request, and having subsequently become insolvent, thereby cutting off the indemnity which the surety would otherwise have had. Second, that by granting the principal an extension of time upon the notes after they became due, he varied the contract of the surety, and thus worked his discharge.

The Plaintiff's Counsel, in a very able argument, evincing a thorough knowledge of the subject, and containing a most elaborate review of the authorities, insists that the first defence is insufficient in not alleging, in connection with the request to prosecute the principal debtor, that the surety tendered the Plaintiff full indemnity against any loss or expense he might incur by a failure to collect of the principal; and also in not alleging that the principal was solvent within the jurisdiction of the Courts of this State; also, that the request to sue should have been in writing.

I will examine these several objections and test their validity. It is a settled and sound principle that the relation of principal and surety involves the utmost good faith and confidence, and makes it the duty of the creditor and the principal debtor to carefully consider and protect the rights of the surety in all their transactions relating to the debt.

We had occasion to apply this rule in the case of *Willis vs. Davis*, 3 *Minn. R.* 17. The facts of that case, were, however, different from the one at bar. The general principle is well stated in 1 *Story's Eq. Jur.*, sec. 325, as follows:

"That, if the creditor does any act injurious to the surety or inconsistent with his rights, or if he omits to do any act, when required by the surety, which his duty enjoins him to do, and the omission proves injurious to the surety, in all such cases the latter will be discharged, and he may set up such conduct as a defence to any suit brought against him, if not at law at all events in equity."

There is one point in this case which may as well be noticed here, while considering the general relation of principal and surety. It will be seen that the language quoted from *Story's Equity*, (and which accords with our views fully,) in speaking of omissions on the part of the creditor to act when requested, as operating a discharge of the surety, confines them to such acts as the "duty of the creditor enjoins him to do." This must be understood to refer to the duties which are imposed by law, and grow out of the legal relation of principal and surety. In this case the Defendant Huey alleges that he signed the notes as surety upon the express condition, known to the Plaintiff, that the notes should run but a short time only. No such condition appears in the instrument, nor does it appear to have been contained in any other instrument in writing of equal obligation with the note. We shall, therefore, entirely overlook the allegation in the discussion of this question, as we do not think, and have on several occasions, in cases not yet reported, held, that parties to written instruments cannot lessen or extend their obligations or liabilities by any verbal understandings or conditions they may enter into before or at the time of their execution, but must be tried upon the law applicable to the position they have assumed by the writing. The duties, therefore, which devolved upon the Plaintiff in this case, were such only as the law imposes upon a creditor holding paper against two parties, one as principal and the other as surety.

I think there can be no doubt that the creditor in all such cases is under an equitable obligation, and such is the essence

39

of the contract, to obtain payment from the principal debtor, and not from the surety, unless the principal is unable to pay the debt. Such is the language of Chief Justice Spencer in *King vs. Baldwin*, 17 *John. page* 393. The law does not recognize this distinction in allowing the creditor to prosecute the surety at the same time with the principal debtor, or even before suit brought against the principal. Yet equity never loses sight of it as long as the debt remains unpaid, and will always protect the surety against any attempt, by either the creditor or the principal debtor, to deprive him of any advantage flowing from his secondary liability and indemnity over against his principal. At law mere delay on the part of the creditor to prosecute the principal will not discharge the surety, even if thereby the principal become insolvent and the surety is deprived of his redress ; yet equity will interpose for good cause shown and compel the creditor to sue the principal before resorting to the surety. This right, however, is always coupled with the condition that the surety shall fully indemnify the creditor against loss from a fruitless suit against the principal. I have been unable to find a single case in equity where the question has been made, or a reference to the doctrine in any of the cases at law, where the in demnity has not been regarded as necessary. 1 *Story's Eq.* Sec. 327 ; *Rees vs Berrington,* 2 *Vesey Jun,* 540 ; 6 *Vesey,* 734 ; *Nisbit vs. Smith,* 5 *Bro.* 578 ; 2 *John. Ch. R., King vs. Baldwin,* 558–9, *opinion of the Chancellor.* This case was subsequently overruled in the Court of Errors but not upon the points that we now cite it. Case in error reported, 17 *John. R.* 384 ; *Warner vs. Beardsley,* 6 *Wend.* 610, *affirmed ;* 8 *Wend.* 194; *Hayes vs. Ward,* 4 *John Ch. R.* 123 ; *Adams' Doctrine of Equity,* 269, *marginal note.*

The first case in which it was attempted by an act *in pais* to compel a creditor to sue the principal debtor before resorting to the surety, arose in New York and is reported in 13 *John, R.* 173, *Pain vs. Packard.* In that case the plea was almost identical with the answer in this case and was sustained by the Court. The case was decided without argument in the Supreme Court but not without ample consideration.

Shortly after the decision in *Pain vs. Packard*, the case of *King vs. Baldwin* arose, 2 *John. Ch.* 554, where the Plaintiff filed his bill for relief against a judgment at law, which had been recovered against him, and in which he had set up the same defence that is made here, and had been overruled. The Chancellor denied the relief sought on the ground that the only way a surety could compel suit to be brought against his principal was by application to equity, and that it could not be done by a mere request. The Chancellor, at *page* 562, says that since the case was argued he has met with the case of *Pain vs. Packard*, and he thinks that a surety was never before discharged by such means. This case was taken to the Court of last resort in New York, 17 *John.* 384, and was there reversed by the casting vote of the President, the members of the Court being equally divided upon the question. Chief Justice Spencer gives the opinion of the Court, in which he holds that the matter of the bill was not *res judicata* by having been overruled as a plea, in the trial at law, and that it is both a good plea at law, and also foundation for a bill in equity. He says:

"There is but a minute shade of difference between the opinion expressed by the Chancellor and that of the Supreme Court in *Pain vs. Packard*, and it is simply this; the Chancellor holds that a Court of Equity must be first appealed to, to compel the creditor to sue at law, whereas the Supreme Court maintain that he can be required by the surety to sue without the aid of a Court of Equity; and if I am right in supposing that there does exist a moral and equitable duty on the part of the creditor to collect his debt from the principal in the first instance (and this must be so, or a Court of Equity could not interfere at all,) then I maintain that a Court of law may without overleaping its just jurisdiction, and in analogy to several other cases in which they take notice of existing equities, not only take cognizance of the equity which requires a creditor to collect his debt of the real debtor, but they may apply the consequence of the refusal of the creditor to sue the principal, without which the principle itself would be of no value, by holding that the surety is discharged, if the creditor will not do his duty and collect his debt, if he can, from the principal."

This case has been frequently commented upon in the courts of New York with severity, sometimes upon the point that the defence was *res judicata*, having been set up and over-ruled in the case at law, and upon which point it is impossible to reconcile it with itself, because it will be observed that the Chief Justice holds that the defence was a good one at law and yet allows it to be again interposed by way of a bill in equity against the very judgment in which it was overruled. *Schroeppell vs. Shaw*, 3 *Comstock*, 454–5—and sometimes because it was decided, upon a tie vote, and against the opinions of many distinguished judges and lawyers. *Warner vs. Beardsley*, 8 *Wend.*, 198. Yet I believe it is law in New York to this day, having been adhered to rather than depart from the ruling of the highest court in the State.

The courts of New York, while they have assented to the case of *King vs. Baldwin*, have endeavored to restrict its operation as authority. Thus in the case of *Warner vs. Beardsley*, the Court held that to bring a case within the decision of *King vs. Baldwin*, it must appear that the principal debtor was solvent *within the jurisdiction of the State*, at the time the request to sue was made. We think however that so far as the allegation of solvency was made in the answer at bar, it was sufficient. It is alleged in connection with a request to sue the debtor upon the note, and accompanied by the allegation that Woodman had at the time, sufficient property of which both the notes could have been collected by due process of law. It would be a rather strained construction to put upon this language, that it did not show the debtor solvent within the process of the Court.

We have referred to these New York cases at such length because we accept some of the principles found in them while we reject others.

It is well settled that Courts of law do recognize and enforce certain equities between principal and surety, and discharge the latter when his rights have been violated. And it cannot be doubted that in New York, while their Court of Chancery was a distinct tribunal, that the facts contained in the answer in this case, with the addition of solvency within

the jurisdiction, would have sustained a bill in equity to restrain the Plaintiff from proceeding at law against the surety Huey, under the authority of the case of *King vs. Baldwin*, even if such facts could not have been pleaded in defence at law, under the authority of *Pain vs. Packard*. We think that the jurisdiction in the the two Courts was concurrent. In either event, however, under our practice, where equitable defences may be pleaded at law, there can be no doubt that a surety who has taken the steps that would have entitled him to restrain the creditor from proceeding against him at law under the old system, may now avail himself of his acts as a defence when he is sued upon his contract. But as a Court of Equity would not interpose in his behalf, unless he accompanied his request to sue the principal with an indemnity against loss by so doing, we do not think a defence can be sustained upon a request without a tender of indemnity.

In Pennsylvania it has been held that where the principal is solvent, the surety will be discharged, if the creditor does not proceed to collect on request or permit the surety to proceed in his name. *Dehuff vs. Turbitt's Exrs.* 3 *Yeates* 157; *Cope vs. Smith's Exrs.* 8 *Serg. & Rawle*, 110 ; *Gardners Admr's vs. Ferree* 15 *Id.* 28. Chancellor Walworth, in *Warner vs. Beardsley*, 8 *Wend.* 198, *says*, that this is because they have no Court of Chancery in that State to enable the surety to proceed in his own name to compel payment by the creditor. I have not now access to the Pennsylvania cases, although we examined them at term, and I think such is the fact.

The Chancellor in *King vs. Baldwin*, 2 *John, Ch. R.* 557, objects that the request should be in writing as it would be dangerous to allow parol declarations to impair the force of written contracts, and the Plaintiff makes this one of his points of objection to the Defendant's answer ; but we think this objection is sufficiently answered by Chief Justice Spencer, in his review of the case in the Court of Errors, where he shows that the same objection might be urged against all acts *in pais*, such as demand of goods in trover, demands of payment on promissory notes, and all similar cases. It would always relieve a case of uncertainty to make such demands

in writing, but verbal demands have never yet been questioned, and it would be introducing a new principle in the law to hold them insufficient now.

The parties seem to have overlooked a statutory provision of this State, that in my judgment, puts an end to this branch of the Defendant's answer. It is as follows:

"An action may be brought by one person against * * * two or more persons for the purpose of compelling one to satisfy a debt due to the other, for which the Plaintiff is bound as surety." *Comp. Stat.* 620, *Sec.* 35.

Now if the Defendant, Huey, had the power in his own hands to sue the maker and the holder of the notes, to compel the maker to pay the holder, which is clearly the authority granted by this section, then he should have exercised his right and not demanded that the holder should do so for him. He could hardly put the risk and expense of the suit on a party much less interested than himself.

The remaining question to be considered, is the sufficiency of the answer in alleging an extension of time to the principal debtor. It is unnecessary to cite authorities to the general principle, that an extension of time upon a binding consideration to the principal debtor, will discharge the surety. The question was considered by this Court in the case of *Willis vs. Davis*, 3 *Minn. R.* 26, above cited, and we are satisfied with that holding. The allegation in the answer in this case is: "That the Plaintiff, at the request of the said Woodman, and without the consent of this Defendant, after the maturity of each of said notes, extended the time of payment thereon to said Woodman, for a valuable and binding consideration from said Woodman." The object of pleading in an answer is to advise the party Plaintiff of the defence that will be interposed to his recovery. The allegation in this instance is of a fact peculiarly within the knowledge of the Plaintiff and although the general fact that an extension may have been granted upon a valuable consideration, may be known to the Defendant, he may rest entirely upon the the testimony of the Plaintiff to prove the particulars of it upon the trial, and be unable to ascertain them in any other way. There can be no surprise to the Plaintiff by such an allegation. He is

apprised of the nature of the defence, and can prepare to meet it quite as well as if it was stated with more particularity. The strictest rule contended for by the Plaintiff could only require that the particular time for which the extension was granted should be stated; not by whom it was to be proven or the precise consideration paid, and this while it would not aid the Plaintiff to prepare against it, or protect him against surprise, might deprive the Defendant of the advantage of a defence, which he is certainly entitled to, if the fact which he alleges is true. We think under our sytem of pleading this defence is well stated. *See Allen vs. Patterson 3 Seld.*, 476; *Comp. Stat.* 542 *sec.* 79.

The Judge erred in holding that the Plaintiff was entitled to judgment on the pleadings. The judgment is reversed and a new trial awarded.