ABERCROMBIE v. KNOX, SNODGRASS, *et als.* AND CROSS BILL OF RIDDLE v. ABERCROMBIE AND OTHERS.

1. The holder of a bill of exchange may sue all the parties to the bill, or either, at his election, but can have but one satisfaction.
2. The mere omission to sue any party to the bill, or the failure to sue out execution against any prior party to a bill, will not discharge the liability of a subsequent party; but to produce that result, there must be an agreement by the holder with such prior party, on sufficient consideration for delay, by which he has tied up his hands from proceeding.

3. An allegation that a sum of money, which has been paid, has not been credited on the execution, is not sufficient to give a court of chancery jurisdiction, unless it is also charged, that the plaintiff refuses to enter the credit on the execution, or that he is attempting to enforce payment a second time.

4. A creditor cannot be compelled to exhaust his remedy against the principal debtor before he resorts to the surety, unless under peculiar circumstances, rendering it proper that a court of chancery should interfere.

Appeal from the Chancery Court at Talladega.

THE bill states that one Walker drew a bill of exchange on the defendant Riddle, for three thousand five hundred and twenty dollars forty-three cents, payable at the Bank at Montgomery, which bill was accepted by Riddle; and which at the instance and persuasion of Riddle, and on his assurance that there was no risk, complainant indorsed it; that the bill was also indorsed by T. Maddox and D. Conner,—and afterwards and in the regular course of trade, became the property of Knox, Snodgrass & Co. The bill not being paid at maturity, separate suits were brought thereon against all the parties to it by the holders. The complainant alleges, that after judgment was obtained against Walker, he applied to Knox & Snodgrass for leave to cause the money to be made from Walker, the drawer, which they refused; that if execution ever issued against Walker, it was not acted on, and that Walker, Maddox, and Conner, are now reported insolvent. That execution having issued against complainant, he prosecuted a writ of error to the Supreme Court, which was dismissed. That a *fi. fa.* also issued against Riddle, and a small part of the money made thereon, after which Riddle also prosecuted a writ of error to the Supreme Court, which was dismissed.

Alleges that it was alone from the persuasion of Riddle, that he indorsed the bill, and that Riddle and his sureties in the writ of error bond are indemnified against loss, and that the money paid by Riddle, was out of funds provided by Walker. The prayer of the bill is, that the money be collected from Riddle, and that the plaintiffs at law be enjoined from proceeding against him, until it is ascertained [that the money cannot be made from Riddle, or his security, for the writ of error.

Riddle in his answer, admits the facts relating to the making of the bill, but denies that he induced the complainant to indorse the bill. Denies that he is indemnified by Walker—has

46

paid twenty-two hundred and fifty-six dollars, of which but two hundred and seventy-five were paid by Walker. That he accepted the bill for the accommodation of Walker. That the design of the sheriff in levying on property of the complainant, is to compel complainant and respondent to pay each a portion of the debt. The facts stated in the answer are relied on in a cross bill, and in addition, that thirteen hundred dollars has been paid by him, and not credited on the execution. That Knox & Snodgrass, instead of collecting the money rateably from all the parties to the bill, insist on collecting it from him entire. The bill prays an injunction, which is granted.

Knox & Snodgrass in their answers state, that they are bona fide holders of the bill for a valuable consideration; that they know nothing of the motives of those who became parties to the bill; admit that complainant applied for the control of the judgment against Walker, which was refused, unless the debt was paid; admits the receipt of a part of the money, and that another sum is in the hands of his attorney—denies all fraud, &c.

These causes coming on to be heard together, the Chancellor dissolved the injunctions, from which both parties prayed an appeal, which was granted.

RICE, for Abercrombie—contended, that the acceptor of the bill was primarily liable, and that as it appeared the money could be made from him, it was inequitable to coerce it from the indorser, especially as the acceptor was indemnified. That the refusal of Knox & Snodgrass to permit the complainant to run the execution against Walker, the drawer discharges them from all liability as Walker is now insolvent. He cited, 16 Johns. 175; 10 ib. 586; 4 ib. 129; 17 ib. 384, 9 Porter, 384; 1 Maddock, 235; 16 Johns. Rep. 70; 4 John. C. Rep. 123; 2 ib. 202.

B. F. PORTER, for Riddle.
COCHRAN, for Knox, Snodgrass & Co.

ORMOND, J.—There is no equity in this bill so far as it relates to the holder of the bill of exchange, Knox & Co. The acceptor of the bill is certainly primarily liable, and the liabili-

ty of the other parties to the bill, as it regards the holder is conditioned upon his default. If at the maturity of the bill, the acceptor refuses to pay on demand, and the drawer and indorsers are duly notified of the fact, each of them becomes absolutely responsible to the holder for the amount of the bill; and he may prosecute a suit for its recovery against one or all of them, at his election, although he can have but one satisfaction.

This, it appears, he was doing, when arrested by the injunctions awarded at the instance first of the first indorser, and secondly, at the instance of the acceptor of the bill. As between the parties to the bill themselves, in adjusting their several responsilities, the acceptor is primarily responsible for its payment and answerable over to any party, subsequent to him on the bill, who may be compelled to pay it. It is for this reason, that every party to a bill, is in the nature of a surety, for all those whose liability on the bill is precedent to his; and therefore a valid agreement, entered into by the holder with such prior party for delay of payment, will be a discharge of the liability of all parties subsequent to him on the bill.

To produce this result, there must be an agreement, on sufficient consideration, by which the holder disables himself from suing or proceeding to collect the money; the mere omission to sue or failing to sue out execution, will not have this effect. But even this pretext does not exist in this case; the holders appear to have been actively pursuing all the parties on the bill. When they attempt to coerce payment from the first indorser he meets them with the objection that they must look to the acceptor; that he is *primarily* responsible, and besides has a fund appropriated for the payment of the bill by the drawer; when they turn round to the acceptor, he informs them that he is a surety as well as the first indorser, and that the money must be made in equal portions from both. Without stopping now to inquire whether an accommodation acceptor can be considered in the light of a co-surety with an accommodation indorser, without an agreement between them to that effect, it is perfectly clear that the creditor is not obliged to exhaust his remedy against the principal debtor before he resorts to the surety, even in the case of a suretyship proper, which is not the fact here, so far as the holder of the bill is concerned. The case of Hayes v. Ward, 4 Johns. Chan. 123, cited to maintain

the contrary doctrine, is not an authority that way, but was decided on the peculiar circumstances of the case, whilst the general rule is admitted to be as here laid down. The facts of that case were peculiar, and it is very clear from the reasoning of the Chancellor, that he felt he was treading on doubtful ground, as he distinctly admits that there was no such general rule as is here contended for, and puts the case explicitly on the fact, that the conduct of the creditor, was such as to justify the belief, that the contract he was seeking to enforce against the surety, was invalid from usury, and that if the surety was compelled to pay, he could not recover from his principal. The amount of the decision then is, that cases may possibly exist, in which a Court of Chancery will interfere, and compel a creditor to proceed against the principal debtor before he resorts to the surety. No such fact exists in this case, and there is therefore no warrant for the interference of a Court of Chancery

Much stress was laid in the argument on the fact, that the complainant requested the holders of the bill, to permit him to run the execution against the drawer, which they declined. In the answer, one of the parties denies all knowledge of the fact; the other admits the request, and says, he offered to give the complainant the control of the judgment, if he would discharge the debt by the payment of the judgment against him, otherwise, he declined interferring with the matter in the hands of his attornies. This was all the complainant had a right to ask, and all he could have obtained if he had filed a bill in chancery for that purpose.

The only fact charged in the bill, having the semblance of equity, is in the cross bill of Riddle, where it is charged that a sum of money collected from him by garnisheeing one of his debtors, is not credited on the execution; but it is not stated that any attempt is making to collect the money again, or that Knox & Co. refuse to allow the credit on the execution; or that any application has been made for that purpose; and if it were conceded that the Court out of which the execution issued, could not afford a summary and cheap redress, there is no pretence for invoking the expensive and dilatory aid of a Court of Chancery, unless it appeared satisfactorily that Knox & Co. were attempting a second time, to coerce payment. This is not

shown, by the mere fact that the credit is not entered on the execution. It will be time enough to attribute such fraudulent conduct to the plaintiff at law, when they attempt a second time to make the money, or refuse, on application, to enter the credit on the execution.

Whatever may be the rights of these parties, as between each other, as it regards the plaintiffs at law the bill is entirely destitute of equity, and the decree of the Chancellor, dissolving the injunction, is therefore affirmed.