(61 N. W. Rep. 467.)

---

## J. F. BINGHAM *vs.* E. A. MEARS, *et al.*

Opinion filed November 13th, 1894.

**Appeal Bond—Liability of Surety.**

> It is no defense to an action against sureties on an appeal undertaking that the plaintiff holds security amply sufficient to pay the claim for which the sureties have become bound, and that plaintiff has refused on demand to resort to such security for payment, there being no proof that the sureties were prejudiced by such refusal.

**Rights of Surety as to Collateral Held by Creditor.**

> Whether a surety may not, under exceptional circumstances, compel a creditor to exhaust collateral security before suing him, not decided.

Appeal from District Court, Cass County; *McConnell*, J.

Action by J. F. Bingham against E. Ashley Mears and M. B. Mears on an undertaking on appeal. Judgment for plaintiff, and defendants appeal.

Affirmed.

*A. S. Drake*, for appellants.

A surety can compel the creditor to proceed against the debtor, until he has exhausted his remedy against the debtor. Story's Eq. Jur. 327, 494, 639; Daniels Neg. Inst. 1339; *Black River Bank v. Page*, 44 N. Y. 457; *Philadelphia Ry. Case*, 5 At. Rep. 361; § 1681, Civil Code; *Kennedy v. Falde*, 29 N. W. Rep. 670, 4 Dak. 319; *Meridan Silver Plate Co. v. Flory*, 7 N. E. Rep. 753; *Richards v. Oscola County Bank*, 45 N. W. Rep. 294. All the surety has to do to protect his property is to point out property belonging to the principal debtor. *Barnes v. Cavanaugh*, 3 N. W. Rep. 803; *Bedwell v. Gephart*, 24 N. W. Rep. 585.

*Newman, Spalding & Phelps*, for respondent.

The obligation of defendants is statutory and not common law. *Thompson* v. *Blanchard*, 3 N. Y. 335; *Doolittle* v. *Dininny*, 31 N. Y. 350. An undertaking on appeal is an absolute independent contract on the part of the sureties, in the nature of a guarantee of payment. *Curtis* v. *Richards*, 9 Cal. 34, *City of Sacramento* v. *Dunlap*, 14 Cal. 421; *Murdock* v. *Brooks*, 38 Cal. 596; *Heebner* v. *Townsend*, 8 Abb. Pr. 234; *Robinson* v. *Plimpton*, 25 N. Y. 487; *Staples* v. *Goky*, 34 Hun. 289.

Plaintiff is not bound to exhaust his remedies against the Mortgage Bank and Investment Co., or resort to collateral. *Heebner* v. *Townsend*, 8 Abb. Pr. 234; *Murdock* v. *Brooks*, 38 Cal. 596; Laws 1891, Ch. 120. § 22; *Wallerstein* v. *American Surety Co.*, 15 N. Y. Supp. 954.

CORLISS, J. The defendants were sureties on an undertaking given on appeal to this court from a judgment. Their only defense to this action against them on the undertaking is that the principal on whose behalf they signed the undertaking assigned to the plaintiff, as collateral to the claim on which such judgment was rendered, certain promissory notes secured by real estate mortgages, and that such collateral security is sufficient to pay such judgment and all expenses; that they have notified the plaintiff that he must resort to such collateral to collect his claim, but that he has failed to do so. Under the circumstances of this case, these facts do not constitute a defense. The general rule is that the surety has no right to insist that the creditor shall first proceed against the principle debtor, or any security which such debtor may have given him. Upon default the surety may at once be sued. 1 Brandt, Sur. § 97. It is true that in cases characterized by exceptional features, equity may compel the creditor to resort first to the property of the principal debtor where this will occasion no inconvenience or delay to the creditor. See *Railroad Co.* v. *Little*, (N. J. Err. & App.) 7 Atl. 361. But the facts of this litigation do not call for the application of this rule. There is no claim that the principal debtor is insolvent, or that these collateral securities will not be available to the sureties in

their hands for their indemnity after they have become by payment subrograted to all the rights of the plaintiff therein. There is also another rule which appears to be well supported, but this case is not brought within its scope. There is authority for the doctrine that upon indemnifying the creditor against the expenses of the proceedings the surety may, in equity, compel him to first exhaust his remedies against the principal debtor. Brandt, Sur. § 238. But in this case no offer of indemnity appears to have been made. This is a simple action at law upon a contract. The right of the sureties with respect to this collateral security is to resort to it themselves on paying the debt, and not to compel the creditor to resort to it. It is because of this right of a surety to look to such security for indemnity after he has paid the debt that the release of such security by the creditor will discharge the surety. When the surety is sued, he cannot, in an ordinary case at least, defend on the ground that the principle should have been first sued, and all efforts to collect the debt from him exhausted. On the same principle, the surety cannot insist that the creditor must first essay to collect his claim out of the collaterals the principle debtor has given him, except in the case mentioned in section 4310. This statute is inapplicable to this action. Another section of our statutes clearly contemplates that the mere failure, after request, to sue the principle debtor, or to proceed against collateral security, will not defeat an action against the surety. The latter may nevertheless be sued, and is liable for every dollar of the debt, except to the extent that he is prejudiced by the refusal of the creditor to proceed as requested. Comp. Laws, § 4305. The fact that the principal debtor has not been sued, or that collateral security has not been exhausted, is never a defense of itself. It is not a defense, even when a request of the surety is shown, that the creditor sue the principle or resort to his collateral, unless the surety is prejudiced by the failure of the creditor to act as requested; and then only to the extent of such prejudice. To have made out a defense because of the failure to resort to this collateral security, defendants should have proved that they had been prejudiced thereby.

Another section of our statute leads us to the same conclusion. Section 4310, Comp. Laws, provides that "whenever property of a surety is hypothecated with the property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation." Here is a single instance in which the surety may insist that collateral held by the creditor shall be first exhausted. It follows that in no other case does this right exist, unless the right was well established under the decision prior to the enactment of this statutory law. So far from finding such a rule to have been settled at the time our Code was adopted, we have been unable to discover a single authority sustaining such a doctrine where the facts were not exceptional. All the adjudications support the contrary rule. *Fuller* v. *Loring*, 42 Me. 481; *Thorn* v. *Pinkham*, 84 Me. 101, 24 Atl. 718; *Morrison* v. *Bank*, 65 N. H. 253, 20 Atl. 300; *Abercrombie* v. *Knox*, 3 Ala. 728; *Allen* v. *Woodard*, 125 Mass. 400; *Jones* v. *Tincher*, 15 Ind. 308; *Brick* v. *Banking Co.*, 37 N. J. Law, 307; 1 Bandt, Sur. § § 97, 237; *Buck* v. *Sanders*, 1 Dana, 187; *Day* v. *Elmore*, 4 Wis. 190–198; *Pen* v. *Ingles*, 82 Va. 65; *Davis* v. *Patrick*, 6 C. C. A. 632, 57 Fed. 909; *Callahan* v. *Mitchell*, 29 Ind. 419; *Aultman* v. *Smith*, 52 Mo. App. 351.

The judgment of the District Court is affirmed. All concur.

## ON REHEARING.
### (Jan. 2, 1895.)

The earnestness with which counsel for defendants have pressed upon us their application for rehearing constrains us to go more fully into the discussion of the exceedingly interesting question presented on this appeal. In their main features, the English common law and the Roman civil law differed radically from each other touching the right of the surety to require the creditor to proceed against the principal debtor or the security the debtor had given the creditor before coercing payment by the surety. In the earlier period of Roman jurisprudence, the right of the surety to compel the creditors to resort first to the principal to collect his demand appears to have been well established; but the rule

was gradually departed from. Justinian, however, restored it, and from his time the doctrine was universally recognized throughout the empire. It has been incorported in the jurisprudence of many of the nations of Europe. Burge, Sur. pp. 329–341; *Hayes* v. *Ward*, 4 Johns. Ch. 123–133. But it never secured a footing in England. There the contrary doctrine has prevailed from the earliest times. The common law rule is that the surety must pay and seek reimbursement from the principle or out of the securities the latter has given the creditor. This was always the rule in courts of law. But in equity and in bankruptcy proceedings a rule somewhat analogous to that of the civil law grew up. This rule, however, was less sweeping in its effects upon the creditor than the rule promulgated by Justinian. It more carefully guarded his rights from prejudice. The English law regarded the promise of the surety as an absolute promise, unless it was in terms conditional. The surety was under the same obligation as the principal to pay the debt. The courts of law therefore ignored the equities between the principal and the surety when the creditor was seeking to collect his claim of the latter. In equity, also, the promise of the surety was looked upon as an unconditional promise; but equity, unlike the law, would not, under all circumstances, refuse to consider the rights of the surety in his relation to the principal; and whenever a case arose; special in its character, calling for the aid of equity to protect the surety from injury, that court, true to its traditions and its fundamental principles, extended relief to the surety, whenever it could so without, on the other hand, affecting the right of the creditor to the payment of his debt according to the terms of his contract. But in all such cases equity required that the creditor should be saved from delay, from expense, and from all risk. 1 Brandt, Sur. § 238; 24 Am. & Eng. Enc. Law, p. 799, and cases. When the object of the surety's appeal to equity was to compel the creditor to exhaust the collaterals in his hands before proceeding against the surety, the foundation of equitable relief was the inability of the surety himself to enforce such

collateral after paying the debt, or the possibility that the creditor by some act had impaired its value or destroyed its legality. The mere fact that the creditor held security for the debt did not entitle the surety to appeal to equity for a decree that the creditor look first to such security for his pay. In such a case the surety could protect himself by paying the claim, and by being subrogated to the creditor's rights to the security. But if, after payment by him, he could not enforce such security, or if grave doubt existed as to its legality because of some act of the creditor with respect to it, then a special case was presented, necessitating the interference of equity to prevent injustice to the surety; but even in such cases equity never interposed its aid without exacting the most ample protecting of the creditor against all damages because of delay, and all expenses of other proceedings than those against the surety, and the most complete indemnity against all loss because of the creditor's right of recovery against the surety being postponed. Mr. Burge, in his work on Suretyship, after referring to the civil law which permits the surety to compel the creditors to first sue the principal and exhaust collaterals, says, at pages 341 and 342: "The jurisprudence of England and of those colonies which adopt it does not, in that part of it which administers strict law as distinguished from equity, give this privilege to the surety. But in the administration of that part which is called equity and in the administration of the bankrupt laws a relief similar in its effect is afforded to him. It treats the creditor, however, as entitled to avail himself of all his securities in order to obtain the full payment of his demand. Thus, if the creditor have both a personal remedy against the surety for his demand, and also a fund to which he may resort for payment, and to which fund the surety even, when he has paid the creditor what is owing to him, cannot resort, a court of equity will, when it is satisfied that the creditor has the clear means of making his demand effectual against the fund, and upon the surety's indemnifying the creditor against the consequences of all risk, delay, and expense, compel the creditor to

make the fund available towards the satisfaction of his debt, before he proceeds personally against the surety." Said the chancellor in *Hayes* v. *Ward*, 4 Johns. Ch. 123, at p. 131: "I am not aware that there is any general rule in chancery that the creditor must look to the principal debtor, and exhaust his remedy against him, before he can be permitted to resort to the surety. The general language in the books and the practice have been otherwise, and the surety has been considered (without any formal adjudication upon the point, and perhaps without any examination of it upon principle) as amenable in ordinary cases to the creditor in the first instance, though the creditor may have taken ample security. The creditor has usually called on the surety at his election, and left him to resort to the principal debtor for his indemnity after he. has paid the debt, and after he has been clothed by substitution with all the rights and securities of the creditors. 'The holder of the security, therefore, in general cases,' says Lord Eldon in *Wright* v. *Simpson*, 6 Ves. 734, 'may lay hold of the surety; and, till very lately, even in circumstances under which the surety would not have had the same benefit that the creditor would have had.' But in late cases, and under particular circumstances, Lord Eldon admits that the surety has a right to call upon the creditor to do the most he can for his benefit." Referring to these cases holding that this may be done, the chancellor says of them: "But all instances to which I have alluded may be considered as cases of a special nature. They do not appear to establish any such general rule as that derived from the civil law requiring the principal debtor to be first sued, which rule prevails in all those countries where the civil law is an essential part of the municipal law of the land." The chancellor granted relief to the surety in this case solely upon the ground that there was reason to believe that the creditor, by tainting his security with usury through subsequent dealings therewith, had rendered it void; thus placing the surety in a position where he could not have the benefit of it upon paying the debt. On this question the chancellor said: "I put this case entirely upon the

ground of the allegation, to which no answer has been given, that the mortgage is infected with usury, and would be useless and void if placed by substitution in the hands of the surety. If this should happen to be the case, the plaintiff, on paying, might be deprived of all indemnity from his principal by reason of the conduct of the creditor." Said the court in *Newcomb* v. *Hale*, 90 N. Y. 327, at p. 330: "Spencer, C. J., in his opinion in *King* v. *Baldwin*, 17 Johns. 386, seems to assume that a surety may always proceed in a court of equity, after the debt becomes due, to compel the creditors to collect of the principal debtor. But the authorities do not sustain the broad proposition assumed by the learned judge. There must be some specific equity beyond the mere relation of surety and creditor to entitle the surety to this relief." In a recent case in the circuit court of appeals that court rendered a decision directly in point. *Davis* v. *Patrick*, 6 C. C. A. 632, 57 Fed. 909. In the course of the opinion the court said: "Some cases have been cited by the learned counsel for the plaintiffs in error, the authority of which we do not dispute, that under certain circumstances a court of equity, at the instance of the surety, will coerce a creditor to proceed with the collection of his claim against the principal debtor. But these are cases where, by the delays and forbearance of the creditor, the surety is liable to sustain loss, or where the creditor has access to a fund for the payment of his debt, which the sureties cannot make available. The principle has never been extended to a case like the one at bar, where the creditor has merely exercised his right of election as between two remedies for the collection of a debt, and where the securities held by the creditor may be made immediately available to the surety by his paying the debt and seeking subrogation." In *Irick* v. *Black*, 17 N. J. Eq. 189–195, the court said: "If the court is asked to interfere on behalf of the surety before judgment is recovered against him, he must present some special ground of equitable relief." See, also, *Bank* v. *Smith*, (Cal.) 35 Pac. 1027; *Bank* v. *Wood*, 71 N. Y. 407, 411, 412; *Abercrombie* v. *Knox*, 3 Ala. 728.

The general rule that some peculiar equity must exist in favor of the surety—that the case must be an exceptional one to entitle the surety to relief—applies as fully when the surety is seeking to compel the creditor to first sue the principal as when he is insisting that the creditor shall first exhaust the security he holds. These rules of the common law constitute the law of this state, so far as they have not been changed by statute. We will shortly come to that subject. Now, it is obvious that defendants' answer discloses no special equity in their favor. The security which they ask the court to compel the creditor to exhaust they can secure absolute control of by themselves paying the claim they owe. As between the creditor to whom a debt is owing and the surety who owes it, equity very properly declares that the creditor ought not to be compelled to enforce, for the benefit of the surety, the security he holds, but that the surety himself should pay the debt, and enforce such security for his own benefit. But we are referred to several statutes as having radically changed the common law. They have already been mentioned in the original opinion. Among them, the first we will consider is § 4305, Comp. Laws. This section declares that: "A surety may require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety cannot himself pursue, and which would lighten his burden; and if in such case the creditor neglects to do so, the surety is exonerated to the extent to which he is thereby prejudiced." This provision has a history. It is the statutory embodiment of the rule established in the State of New York in the early days of that state. That rule was first announced by the Supreme Court of that state in *Pain* v. *Packard*, 13 Johns. 174, and was finally settled by the court of errors in *King* v. *Baldwin*, 17 Johns. 384, by the casting vote of the president of the court, a layman who was *ex officio* president of the court by virtue of holding the office of lieutenant governor of the state. It was an anomaly in the law. It rested upon the doctrine that equity would, in special cases, require the creditor to first proceed

against the principal debtor or callateral security held by the former. But this doctrine did not warrant such a rule so broad as to apply to all cases, whether any special equity existed or not. See *Newcomb* v. *Hale*, 90 N. Y. 327–330. The court might have deduced from this doctrine that equity would, under peculiar circumstances, compel the creditor to first look to other sources than the surety for his pay, under the rule that in such cases, and in such cases only, this duty might be cast upon him by a notice to him from the surety to proceed against the principal, or to exhaust collaterals; and that in such cases, and in only such cases, the creditor's failure to do so would exonerate the surety to the extent that it caused him injury. But the court, in *King* v. *Baldwin*, ignored this limitation, and laid down the rule in language whose legal effect is the same as that of the section of our statute above quoted (*i. e.* section 4305.) The New York decisions furnish a clue to the meaning of this provision. The spirit of it is, not to prevent suit against the surety after the creditor has been notified to proceed against the principal, but to place the hazard of the subsequent insolvency of the principal or the subsequent impairment of the security wholly upon the shoulders of the creditor. If the contention of the counsel for defendants that this statute introduces the civil law rule that the surety may always require the creditor to first sue the principal or exhaust the collateral he holds is sound, it is remarkable that the courts of the state which first declared the rule embodied in that section have since that time been called upon, as has been frequently the case, to apply the doctrine that a surety is subrogated to the rights of the creditor on paying the debt. Sureties would have invoked this civil law rule had it been introduced by the New York doctrine in that state; and, instead of paying and exercising the right of subrogation, they would in every case have compelled the creditor to resort to the principal or to collaterals in the first instance. That the rule enunciated in section 4305 does not carry with it the other rule contended for by counsel for defendants—the civil law rule—is apparent from the fact that in

New York, where the former rule has existed for more than one-half a century, we find the courts steadily refusing to recognize the civil law rule, except to the extent that it has been recognized in England. In New York, equity will interfere in only exceptional cases, where special equities in favor of the surety exist. *Newcomb* v. *Hale*, 90 N. Y. 327, 330; *Bank* v. *Smith*, 71 N. Y. 407, 411, 412; *Hayes* v. *Ward*, 4 Johns. Ch. 123, 131, 133, 134; *Warner* v. *Beardsley*, 8 Wend. 199, 200. We therefore discover no reason for holding that section 4305 has wrought the radical change in the common law which counsel for defendants contend that it has.

We are referred to two other sections of our statute as favoring the views of defendants' counsel. They are § § 4310, 5166, Comp. Laws. They provide as follows:

"Whenever property of a surety is hypothecated with the property of the principle, the surety is entitled to have the property of the principle first applied to the discharge of the obligation." Section 4310.

"In all cases where judgment is rendered upon any instrument in writing, in which two or more persons are severally bound, and it shall be made to appear to the court, by parol or other testimony, that one or more of said persons so bound, signed the same as surety or bail for his codefendant, the court must, in entering judgment thereon, state which of the defendants is principal debtor, and which are sureties or bail. And execution issued on such judgment must command the sheriff or other officer to cause the money to be made of the personal property and real property of the principal debtor but, for want of sufficient property of the principal debtor, to make the same, to cause the same to be made of the personal and real property of the surety or bail. In all cases, the property, both personal and real, of the principal debtor, within the jurisdiction of the court, must be exhausted before any of the property of the surety or bail shall be taken in execution." Section 5166.

These statutes are merely declaratory of settled rules. When both principal and surety have, by the same instrument, mortgaged their property for the debt of the principal, no delay or

loss or risk can result to the surety from so enforcing the mortgage that the property of the principal shall be first sold. Nor is an additional action necessary, as the principal and the surety, and the property of both, are all before the court in the one action to foreclose the mortgage. In such a case, equity, to prevent a multiplicity of actions, and to protect the surety with slightest injury to the creditor, will direct that the principal's property be first sold. The courts had established this rule before it found its way into our Code. 1 Brandt, Sur. § 237, and cases cited; *Weil* v. *Thomas*, (N. C.) 19 S. E. 103; *Wheat* v. *McBrayer*, (Ky.) 26 S. W. 809. The case of *Richards* v. *Bank*, (Iowa,) 45 N. W. 294, on which counsel for defendants lay so much stress, belongs to this class. So does *Railroad Co.* v. *Little*, (N. J. Err. & App.) 7 Atl. 356. And yet the existence of this rule has never been regarded as involving as a necessary consequence the establishment of the broad rule of the civil law that in every case the surety can compel the creditor to first seek elsewhere for his pay. This is true of the rule laid down in section 5166. It is, in terms, restricted in its application to cases in which judgment is rendered against both principal and surety. It does not apply when the surety is sued alone. When both of the debtors are before the court, no delay or injury can result to the creditor from being obliged to sell the property of the principal first. His right to a judgment against the surety is not thereby postponed. This is very different from delaying the creditor until he has obtained judgment against the principal, or has exhausted collaterals, when he has sued the surety alone, as he has a perfect right to do, unless the obligation is joint. While these two statutes, and also section 4305, are steps in the direction of the policy of the civil law,—steps which the courts had taken under the common law without statutory authority,—yet it is indefensible to declare that these provisions, limited in their scope, should be construed as being so sweeping in their effect as to revolutionize the common law on this subject. The doctrine announced in *King* v. *Baldwin*, 17 Johns. 384, has been regarded as an unwarranted innovation

upon the common law in most of the states, and their courts have refused to adopt it. See 1 Brandt, Sur. § 242. And even in the state in which it originated it has never been extended, but the whole drift of the adjudications there is to strictly limit its operation. *Trimble* v. *Thorne*, 16 Johns. 151; *Newcomb* v. *Hale*, 90 N. Y. 327–329; *Wells* v. *Mann*, 45 N. Y. 327; *Converse* v. *Cook*, 25 Hun. 44; *Hunt* v. *Purdy*, 82 N. Y. 486; *Lawson* v. *Buckley*, 49 Hun. 329, 2 N. Y. Supp. 178; *Goodman* v. *Simonson*, 74 N. Y. 133; *Warner* v. *Beardsley*, 8 Wend. 194, 198, 199. Certainly it is not a legitimate inference to deduce from the statutory adoption by this state of this special doctrine a purpose to introduce the whole policy of the civil law with respect to the rights of sureties against the creditors into our system of jurisprudence. The implication is the other way, and this implication is very much strengthened by the fact that, while our Code expressly confers upon the surety the right to compel by judicial proceedings the principal to pay the debt (a right recognized by the common law,) it nowhere declares that the surety may by action compel the creditor to first sue the principal, or exhaust the collaterals he holds. See Comp. Laws, § 4306. The decision in *Davis* v. *Patrick*, 6 C. C. A. 632, 57 Fed. 909, is directly in point. There an action was brought upon a supersedeas bond, given on appeal from a judgment. The sureties contended that the creditor could not proceed against them until he had exhausted his remedy against real estate of the principal debtor nearly sufficient in value to pay his claim, which he had attached in the action in which the judgment appealed from had been rendered. The court decided against the sureties, and in refusing to sustain their contentions the court used the language which we have already quoted. Nor was the decision in that case placed upon the ground that in the Federal Courts no equitable defense to an action at law can be interposed. On this point the court said: "It is to be observed that the plea last mentioned merely asserts an alleged equitable right or defense, and it is doubtful, to say the least, whether such alleged equity could, in any event,

be pleaded as a defense to a suit at law in the Federal Courts when the distinction between legal and equitable defenses is still fully preserved. But we do not care to dwell on the latter suggestion. It is obvious, we think, that the plea did not disclose a right on the part of the sureties to have the lien discharged, or the attached lands sold, before a suit was maintained on the supersedeas bond, which a court of equity would recognize and enforce even on a bill filed for that purpose." We have assumed throughout the course of this opinion that the surety may, under our system of procedure, secure by answer the relief which formerly he could obtain only by filing a bill. It has been urged by counsel for plaintiff that the sureties upon an undertaking on appeal are not within the scope of the equitable principles to which we have referred. We have been unable to assent to his view. It is true that their obligation is as unconditional as that of the principal. So is the obligation of the surety upon a promissory note signed by himself and the principal debtor. But he is none the less a surety, and entitled to all the rights of a surety. Unless made in terms conditional, the promise of a surety is always as absolute as that of the principal. 1 Brandt. Sur. § 1; *Harris* v. *Newell*, 42 Wis. 691; *Warner* v. *Beardsley*, 8 Wend. 199. The equitable right of a surety to compel the creditor, under certain peculiar circumstances, to proceed first against the principal or collateral security, does not rest upon the terms or nature of the contract on which he is surety, but upon broad equitable principle that, as between himself and the principal debtor, the latter ought to pay the debt. *Harris* v. *Newell*, 42 Wis. 692. When, coupled with this equity, special facts, which take the case out of the ordinary category, are found to exist, the right exists irrespective of the terms or nature of the contract, provided, of course, that the right is not waived by the language of the contract. The cases cited by counsel for plaintiff do not hold to the contrary. They merely hold that the surety upon such an undertaking is liable absolutely, and no execution against the principal upon the judgment appealed from is necessary

before suing the surety. The decision in *Davis* v. *Patrick*, 6 C. C. A. 632, 57 Fed. 909, is directly against the contention of the plaintiff's counsel in this respect. See, also, *Wood* v. *Fisk*, 63 N. Y. 245. The authorities cited by counsel for defendants are cases in which the court had both parties before it, or the property of both which had been pledged for the debt, or in which, by reason of the peculiar nature of the litigation, it was possible to protect the surety's equity without in the least degree interfering with the right of the creditor to enforce the contract without delay. *Paxton* v. *Rich*, (Va.) 7 S. E. 531; *Beckham* v. *Duncan*, (Va.) 9 S. E. 1002; *Richards* v. *Bank*, (Iowa,) 45 N. W. 294; *Hoppes* v. *Hoppes*, 123 Ind. 397, 24 N. E. 139; *Weil* v. *Thomas*, (N. C.) 19 S. E. 103; *Wheat* v. *McBrayer*, (Ky.) 26 S. W. 809; *Neimcewicz* v. *Gahn*, 3 Paige, 614; *Blackman* v. *Joiner*, (Ala) 1 So. 851; *Railroad Co.* v. *Little*, (N. J. Err. & App.) 7 Atl. 356–361. The whole trend of the common law decisions is in the direction of regarding the right of the creditor to compel the surety to at once perform his contract as superior to the equity of the surety that, as between himself and the principal, the latter ought to pay the debt.

It is urged that the plaintiff should have issued execution on the judgment affirmed on the appeal before suing the sureties. The statute is a complete answer to this contention. It provides that a breach of the undertaking is established by neglect to pay the judgment affirmed within 30 days after such affirmance. Laws 1891, Ch. 120, § 22. The complaint contains an averment that more than 30 days had elapsed since the affirmance of the judgment by the Supreme Court. This allegation is not denied. In the absence of such a provision, the sureties would be liable at once upon the affirmance of the judgment. No case can be found holding that the issue of an execution upon the judgment affirmed is a condition precedent to liability on the part of the surety, in the absence of a statute making such act a condition precedent. On the contrary, the decisions are all the other way. *Davis* v. *Patrick*, 6 C. C. A. 632, 57 Fed. 909; *Babbitt* v. *Finn*, 101

U. S. 7–13; *Murdock* v. *Brooks*, 38 Cal. 596–604; *Smith* v. *Ramsay*, 6 Serg. & R. 576; *Anderson* v. *Sloan*, 1 Colo. 484; *Wallerstein* v. *Surety Co.*, (City Ct. N. Y.) 15 N. Y. Supp. 954. The rehearing is denied.

The judgment is affirmed.   All concur.