[1] Reported in 201 N.W. 424.
The sureties on a public contractor's bond given by William H. Gugisberg were liable for the purchase price of cement pipe furnished by the Saffert-Gugisberg Cement Construction Company, a Minnesota corporation. After the pipe was ordered, the corporation issued 40 shares of its stock to Gugisberg. It had a lien on the stock to secure the payment of Gugisberg's indebtedness. Section 6176, G.S. 1913. The certificates were in the possession of the defendant Saffert. After Gugisberg's death, the sureties paid his debt to the corporation and brought this action to compel Saffert to deliver the certificates to them to enable them to enforce the statutory lien of the corporation. Saffert has appealed from the judgment in their favor.
Many of the pertinent facts are stated in Benson v. Saffert-Gugisberg C.C. Co. 159 Minn. 54, 198 N.W. 297. The additional facts found by the trial court may be thus summarized: At the time of his death, Gugisberg owed the corporation $11,651.94. Plaintiffs completed performance of his contract at a net loss of $9,709.46. On October 2, 1920, Saffert advanced $4,000 to Gugisberg, taking his promissory note for that amount. At that time, or shortly thereafter, Gugisberg agreed that when additional stock in the corporation was issued to him it should be held by Saffert as collateral to the note. When the agreement was made, both men were stockholders and officers. On or about January 21, 1921, additional stock was issued. Gugisberg received 20 shares of common and 20 shares of preferred stock. Saffert claims the stock by virtue of his agreement with Gugisberg.
The court held that at the time of Gugisberg's death the corporation had a lien on this stock, to which plaintiffs became *Page 271 
subrogated when they paid his debt; that it was superior to Saffert's lien; and that the stock should be sold to satisfy the amount due plaintiffs from Gugisberg's estate. The only error assigned is that the conclusions of law are not justified by the findings of fact.
The principal question is this: Under the circumstances of this case did the sureties become subrogated to the statutory lien of the corporation upon the stock issued to Gugisberg?
The lien attached when the indebtedness to the corporation and the ownership of the stock concurred, Schmidt v. Hennepin County Barrel Co. 35 Minn. 511, 29 N.W. 200, viz., on January 21, 1921.
As against Saffert, the lien was paramount, for it needs no argument to demonstrate that he could not curtail or impair the corporation's lien rights by an agreement intended to protect himself against loss in his personal dealings with Gugisberg. Their relation to the corporation was fiduciary, and Gugisberg could not give and Saffert could not acquire an interest in the stock which would defeat the lien of the corporation.
This then was the situation on and after January 21. As security for the payment of Gugisberg's indebtedness, the corporation had (1) a lien on his stock, which it might have enforced by a foreclosure suit, U.S. C.L. Co. v. Sullivan,113 Minn. 27, 31, 128 N.W. 1112, Ann. Cas. 1912A, 51, and (2) the undertaking of the sureties on his bond. It did not see fit to foreclose, preferring to call upon the sureties for payment. Their payment did not extinguish the debt. Equity would keep it alive for their benefit, would treat the payment as a purchase, would recognize their right to a cession of all the remedies the corporation possessed against Gugisberg, Felton v. Bissel,25 Minn. 15, 19, Nettleton v. Ramsey County L. L. Co. 54 Minn. 395,56 N.W. 128, 40 Am. St. 342, and, since this was a public bond, would give them all the rights of the state with respect to its liens, securities and priorities. Sucker v. Cranmer,127 Minn. 124, 149 N.W. 16; Am. Surety Co. v. Pearson, 146 Minn. 342,178 N.W. 817; Nat. Surety Co. v. State Savings Bank, 156 F. 21, 14 L.R.A. (N.S.) 155, 13 Ann. Cas. 421; Woodyard v. Sayre, 90 W. Va. 295,110 S.E. 689, 24 A.L.R. 1497, annotated. *Page 272 
Few cases can be found involving the precise question here presented. The text writers generally lay down the rule that on paying a debt due to a corporation from a stockholder, a surety becomes subrogated to the corporation's statutory lien on the debtor's stock. Thus, in Morse, Banking, § 703, we find this language:
"The lien is primarily for the benefit of the bank. But if the principal debtor furnishes sureties * * * upon the debt, and they pay the amount to the bank, they will then be subrogated to all the rights of the bank. They will be entitled to avail themselves of the lien, and the bank will owe to them the duty of refusing to allow a transfer of the shares, and must not suffer a waiver or loss of the security by any other means, until they have been reimbursed. After payment by them, the bank in fact becomes a trustee for them, for the purpose of doing whatever may be necessary to retain and secure the lien for their benefit."
See also Cook, Corp. p. 1837; Fletcher, Corp. § 3612; Spencer, Suretyship, § 145; Stearns, Suretyship, § 118; 5 Pomeroy, Eq. Jur. p. 5205. The author last cited makes this general statement:
"The subrogee is, in general, entitled to stand in the shoes of the creditor, and to enforce every right which the creditor himself could have enforced, so far as necessary to secure reimbursement or contribution." Page 5203.
True, the statutory lien of a corporation is not assignable in the sense that the transfer of a demand against a stockholder will carry the lien with it, but nevertheless a surety may have a right in equity to compel the corporation to exhaust the security afforded by its lien before calling upon him to pay the debt of the stockholder.
As a general rule it is within the power of the surety to protect himself by paying the debt, thereby becoming subrogated to all the rights of the creditor in respect to the securities, and hence he cannot compel the creditor to resort to the securities before coming upon him. Spencer, Suretyship, § 179.
But where the surety, on paying the debt, cannot have the benefit of the securities, a court of equity will compel the creditor to avail himself of the securities to which he alone may resort, before proceeding *Page 273 
against the surety, the basis for equitable relief being the inability of the surety to enforce the security after paying the debt. Bingham v. Mears, 4 N.D. 437, 61 N.W. 808, 27 L.R.A. 257; Spencer, Suretyship, § 179.
May the sureties invoke this doctrine in view of the fact that they took no steps to compel the corporation to enforce its lien before the stock came into Saffert's hands?
The court found that, when he received the certificates, Saffert knew that Gugisberg had the contract for the construction of the ditch, had purchased the cement pipe from the corporation and had not paid for it. It will be presumed that he knew that the law gave the corporation a lien on the stock and that he took the stock with knowledge of that fact. He does not occupy the position of a purchaser without notice. He extended credit to Gugisberg before the stock was issued. When it was issued, the debt for which the sureties were bound had been contracted. Grant that there was an equitable assignment of the stock to Saffert, this was after the contract of suretyship came into existence, and the rule is that the right of subrogation, however asserted, relates back to the date of the suretyship. McArthur v. Martin,23 Minn. 74; Benson v. Saffert-G.C.C. Co. supra. The lien of the corporation attached to the stock as soon as it was issued, and the certificates came into Saffert's hands charged with the lien. If the corporation had enforced it, he would have lost the stock. The sureties stand in the shoes of the corporation, and this rule is applicable:
"A surety, being, entitled to the benefit of all the securities for the debt which are available for his indemnity, a person taking any of such securities from the principal, with notice of the facts, is bound in equity to hold them for the indemnity of the surety, and subject to all the equities which the sureties could originally enforce." 1 Brandt, Suretyship, § 348.
When the case was here before we said that the corporation could not assign its lien, and that, because the corporation itself could not make the assignment, the law would not make the transfer, and that is true. But it was the duty of the corporation to the sureties *Page 274 
of its debtor to utilize the lien for its own and their benefit, and it having failed in that equitable obligation to the sureties, equity does not stand powerless to make good the default. It is a clear case for the application of the maxim: "Equity regards and treats that as done which in good conscience should be done." Adapting the language of Mr. Pomeroy, in section 365 of his chateau Jurisprudence, to this case, our conclusions may be thus stated: An equity existed between the corporation and the Sureties, the corporation's obligation being to utilize its lien to decrease so far as possible the payment required of the sureties. The corporation did not fulfil its equitable obligation. Therefore, equity will regard and treat "the subject matter and the real beneficial rights and interests" of the situation as though the "equity" had actually been worked out, and as impressed with the character and having the nature which they then would have borne. To accomplish that end, equity will do whatever is necessary and possible to put the parties in the position they would have occupied if the corporation had fulfilled its equitable obligation to utilize the lien on the Gugisberg stock so as properly to protect its sureties.
Saffert cannot complain for, as to him, the sureties have the superior equity. He never acquired the legal title to the stock. In fact, he never acquired any title superior to the lien of the corporation, which attached simultaneously with the issue of the stock. Gugisberg was in debt to the corporation when the stock was issued and the obligation of his sureties had arisen. Of all this Saffert must be considered to have had notice, and it would never do to permit him, as an officer of the corporation, to use his position to his own advantage by preventing the corporation from enforcing its lien, as in equity it was bound to do, for the protection of the sureties. By not enforcing it the sureties would lose a valuable equitable right and the holder of the stock would have it free from the lien. Such a consequence equity does not permit. The findings of fact justified the court in holding that the equities of the sureties were superior to Saffert's and that they should have the relief they demanded.
Judgment affirmed. *Page 275